IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

TOMMY RICE and                          §
J.R. JACKS, JR.                         §
                                        §
                                        §
VS.                                     §        CAUSE NO. 6:06cv341
                                        §
ROGER WILLIAMS, ET AL                   §
                                        §

## DEFENDANTS TIMOTHY BOONE, JAMES YOUNG, DOUGLAS BAKER, SHIRLEY REED, LARRY FIELDS AND DREW NIXON'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON INJUNCTIVE AND DECLARATORY CLAIMS

Now come Timothy Boone, James Young, Douglas Baker, Shirley Reed, Larry Fields,

Drew Nixon, and the Board of Supervisors of Panola County Freshwater Supply District No. 1

Defendants herein, by and through their attorneys of record, and file this their Motion for

Summary Judgment and in support thereof would respectfully show the Court as follows:

### Procedural History of the Case

1.      On March 3, 2006, Plaintiff Tommy Rice, Jr. and former Plaintiff J. R. Jacks, Jr., filed

their original petition and application for temporary restraining order and temporary and

permanent injunction in the 98th Judicial District Court of Travis County, Texas.  Plaintiffs filed

suit against the Board of Supervisors of Panola County Freshwater Supply District No. 1

("PCFWSD #1", the "water district", or the "board"), Timothy Boone, James Young, Douglas

Baker and Shirley Reed (all board members of PCFWSD#1) and Drew Nixon (PCFWSD#1's

former CPA) and Larry Fields (PCFWSD #1's legal counsel).  Plaintiff also filed suit against

Roger Williams the Texas Secretary of State.

2.      Plaintiff's application for temporary injunction was denied by the state district court on March 24, 2006.

3.      Plaintiffs non-suited Roger Williams, the Texas Secretary of State, on April 4, 2006.

4.      The remaining Defendants removed the case to Federal Court in the Western District of Texas, Austin Division, on April 6, 2006.

5.      Plaintiff J. R. Jacks, Jr., dismissed his claims against the remaining Defendants on June 6, 2006.

6.      Defendants filed a motion to transfer venue from the Western District of Texas to the Eastern District of Texas on June 2, 2006.  The Court granted Defendants' motion to transfer venue and transferred the case to the United States District Court for the Eastern District of Texas, Tyler Division, on July 25, 2006.

7.      An adequate time for discovery has passed.  The required initial disclosures have been exchanged between the parties.  The Plaintiff has deposed Defendants Timothy Boone, James Young, Douglas Baker, Shirley Reed, Drew Nixon and Larry Fields.

8.      Defendant Larry Fields filed his motion for summary judgment on October 9, 2006.

9.      Defendant Fields filed his Reply and Statement of Material Facts on November 11, 2006. The Court has accepted his submission of his Statement of Material Facts (as discussed at Scheduling Conference).

10.     Plaintiff has amended his complaint since Defendant Fields filed his Motion for Summary Judgment and Defendant Fields joins in this motion as a supplement to his prior motion.

11.     Defendants Timothy Boone, James Young, Douglas Baker, Shirley Reed, Larry Fields and Drew Nixon now file this their motion for summary judgment as to all of Plaintiff Tommy Rice's claims against them.

12.     Defendant Panola County Freshwater Supply District No. 1 joins in this motion for summary judgment and seeks dismissal of Plaintiff's claims for injunctive and declaratory relief.

**Statement of Material Facts**

13.     Texas Water Code § 49.013 became effective September 1, 1995.  The provisions of this section of the Water Code require that members of a board of a water district serve four-year terms and that elections for board members be held in even-numbered years.

14.     Texas Water Code § 49.103 allows water districts to adopt single-member districts.

15.     The Texas Water Code does not authorize PCFWSD No. 1 to hold election in odd-numbered years.

16.     PCFWSD # 1 became aware of the provisions of the Texas Water Code § 49.103 in 2005.

17.     When PCFWSD # 1 became aware of the provisions of Texas Water Code § 49.103, the 2005 election was cancelled. PCFWSD # 1 had no statutory authority to hold an election in 2005.

18.     The PCFWSD # 1 Board of Supervisors voted in November of 2005, to make changes in the election process to bring PCFWSD # 1 into compliance with the Texas Water Code and to create single-member districts based upon the single-member districts of the Panola County Commissioners Court.

19.     The election scheme that plaintiff complains of was adopted by a vote of the Board of Supervisors of PCFWSD # 1.

20.     The decisions made by the Board of Supervisors of PCFWSD # 1 regarding canceling the 2005 election, the change in method of electing board members from an at-large system to four

single-member districts and one at-large position, the use of the Panola County Commissioner's Court boundaries for the single-member districts, and the assignment of board members to the single-member districts and the one at-large position, were all legislative decisions of the board members taken at meetings of the Board of Supervisors of PCFWSD # 1.

21.     Each of the four single-member district positions of PCFWSD # 1 corresponds to one of the four Panola County Commissioner's Court precincts.

22.     A majority of the Board of Supervisors of PCFWSD # 1voted to assign Jim Young to Precinct 1, Barbara Perritte to Precinct 2, Shirley Reed to Precinct 3, Douglas Baker to Precinct 4 and Timothy Boone to the at-large position.

23.     The election for Precincts 2, 3 and 4 was scheduled for May 2006 and the election for precinct 1 and the at-large position for election will take place in May of 2008.

24.     Defendants James Young and Timothy Boone were elected to the Board of Supervisors of PCFWSD # 1 in May of 2004. Their four-year terms expire in May of 2008.

25.     The members of Board of Supervisors of PCFWSD # 1 are not compensated for their service on the board.

26.     Defendant Larry Fields is not a member of the Board of Supervisors of PCFWSD # 1.

27.     Defendant Drew Nixon is not a member of the Board of Supervisors of PCFWSD # 1.

28.     Plaintiff does not have a 99-year lease with the PCFWSD # 1.

29.     Plaintiff has two six-month leases with PCFWSD # 1.

30.     PCFWSD # 1 has not refused to transfer any lease held by the plaintiff.

31.     Plaintiff has not sought to transfer any lease he has with PCFWSD # 1.

32.     The terms of the plaintiff's leases have not been changed.

33.     Plaintiff has not requested any changes to the terms of his leases.

34.     Plaintiff obtained a home equity loan on his property in 2006.

35.     Defendants did not promise Plaintiff that he could change his lease from a six-month lease to a 99-year lease.

### Summary of the Dispute

36.     This dispute arises from the PCFSD#1's attempt to create an election scheme that would meet the requirements of the provisions of the Texas Water Code § 49.103 which became effective September 1, 1995.  Texas Water Code § 49.103 requires that members of the board of a water district serve for four years and that elections for the board of water districts be held on even-numbered years.  Unfortunately, PCFSD#1 did not become aware of the legislation until 2005.  When the water district became aware of the legislation it took steps to comply with the requirements of Texas Water Code § 49.103--four-year terms for board members and elections in even-numbered years.  In order to comply with the law, the water district cancelled elections scheduled for 2005 since they were not authorized by statute.  Prior to the discovery of the change to the Water Code the PCFSD#1 was holding elections on odd and even-numbered years and was holding elections for its directors every two years rather than four years as required by Texas Water Code § 49.103.  The water district took steps to comply as soon as it was made aware of the change in the law.

37.     When the law was changed in 1995, former Plaintiff J. R. Jacks, Jr. was a member of the Board of Supervisors of PCFSD#1.  He took no action to implement the changes required by the Texas Water Code.  None of the individuals sued by Plaintiff Tommy Rice were on the board in 1995.

38.     In the fall of 2005 the board members of PCFSD#1 voted to make changes in the election process to bring the PCFSD#1 in compliance with the Texas Water Code and to create single-

5

member districts based upon the single-member districts of the Panola County Commissioner's Court.[1]  Single-member district were authorized by Texas Water Code § 49.103.[2]  The new election scheme, approved by a vote of the board members, included four single-member districts and one at-large board member.  This election procedure was submitted to the Department of Justice for pre-approval and the Department of Justice had no objections to the specified changes. [3]

39.    The Board of Supervisors of PCFSD#1 voted to assign Jim Young to Precinct 1, Barbara Perritte to Precinct 2, Shirley Reed to Precinct 3, Douglas Baker to Precinct 4 and Tim Boone to the at-large position and scheduled the elections for precincts 2, 3 and 4 in May 2006 and the elections for precinct 1 and the at-large position for election in May of 2008.

40.    Jim Young (precinct 1) and Timothy Boone (at-large position) were elected to the board in May 2004 and their four-year terms expire in May of 2008.

### Summary Judgment Standard

41.    Summary judgment may be granted if the moving party demonstrates there is no genuine issue of material fact and it is entitled to judgment as a matter of law.  *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); Fed. R. Civ. P. 56(c).  In deciding the Defendants' summary judgment motion, all facts and inferences will be construed in the Plaintiff's favor.  The Fifth Circuit, however has made it clear that the "standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the evidence before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) *(citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).*  If there is only one reasonable conclusion as to the verdict, then

[1] Exhibits A and D.
[2] Exhibits C, D and  J.
[3] Exhibits B, D, E, F, and G.

there is no issue of fact and the moving party is entitled to summary judgment. *See, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986).

42.     Both parties bear burdens of producing evidence in the summary judgment process. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  First; "[t]he moving party must show that, if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof."  *Hart,* 127 F.3d 424, 435 (5th Cir. 1997)  (*citing Celotex,* 477 U.S. at 327).  If the moving party meets its initial burden, then the non-moving party must "set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings." *Id.*  However, "[n]either 'conclusory allegations' nor 'unsubstantiated assertions' will satisfy the non-movant's burden." *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996).

43.     In order to survive summary judgment, the Plaintiff must do more than allege issues of material fact; he must go beyond the pleadings and by affidavits, depositions, answers to interrogatories, and admissions, on file designate specific facts demonstrating that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Auguster v. Vermillion Parrish School Bd.*, 249 F.3d 400, 402 (5th Cir. 2001).

## Summary Judgment Evidence

44.     Defendants submit as evidence in support of their Motion for Summary judgment the following exhibits, which are included in the Appendix and incorporated herein by reference for all purposes:

    Exhibit A—1/12/06 Letter from Timothy Boone to the Department of Justice.

    Exhibit B—3/27/06 Letter from John Tanner of DOJ to attorney Robert Bass.

    Exhibit C—2/3/06 Letter from attorney Robert Bass to Timothy Boone.

Exhibit D— Affidavit of Timothy Boone.

Exhibits E— Affidavit of James Young.

Exhibit F—Affidavit of Shirley Reed.

Exhibit G—Affidavit of Douglas Baker.

Exhibit H—Affidavit of Drew Nixon.

Exhibit I—Deposition of Barbara Perritte p. 31 ln. 1—7.

Exhibit J— Texas Water Code 49.103.

Exhibit K—Plaintiff's Responses to Defendants' First Requests for Admissions # 1-5.

Exhibit L—Plaintiff's Responses to Defendants' Second Requests for Admissions # 1-9.

Exhibit M—Plaintiff's Responses to Defendants' Third Requests for Admissions # 1-3.

Exhibit N— Certified Copy of Plaintiff's lease for lot # 99 section 1-N (11/07/94).

Exhibit O—Certified Copy of Plaintiff's lease for lot # 100 section 1-N (11/07/94).

Exhibit P—Consumer Home Equity Loan Deed of Trust executed by Plaintiff on 04/27/06.

Exhibit Q—Deposition of Plaintiff Tommy Rice.

## Individual Capacity and Official Capacity

45.     Plaintiff has failed to indicate whether he is suing the individual defendants in their individual and/or official capacities. Since the Plaintiff has sued the governmental entity, all claims against the individual defendants in their official capacity should be dismissed as redundant. A suit against government officials in their official capacity is the same as suing their governmental entity. *Kentucky v Graham,* 473 U.S. 159, 171 (1985).

## Legislative Immunity

46.     The individual members of the Board of Supervisors of Panola County Freshwater Supply District No. 1 (Jim Young, Tim Boone, Shirley Reed, Douglas Baker) are entitled to

legislative immunity.   Legislative immunity is an absolute immunity from civil liability. Legislative immunity applies to local legislators such as the members of the Board of Supervisors of Panola County Freshwater Supply District No. 1.  *Bogan v. Scott-Harris*, 523 U.S. 44 (1998); *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 401-402 (1979).

47.     In *Bogan v. Scott-Harris*, the Supreme Court pointed out that legislative immunity is of special importance at the local level where the time, energy and recourses needed to defend against litigation can easily overwhelm the part-time citizen legislator. *Bogan v. Scott-Harris*, 523 U.S. 44, 52 (1998). *See also Harlow v. Fitzgerald*, 457 U.S. 800, 816 (1982) (the threat of civil liability may significantly deter service in local government, where the financial compensation may pale in comparison to the threat of civil liability).

48.     The legislative actions of the individual members of the Board of Supervisors are protected by absolute immunity without regard for the motive or intent of the board member taking that action.  *Tenney v. Brandhove*, 341 U.S. 367, at 370, 377 (1951).

49.     The privilege of absolute immunity "would be of no value if [legislators] could be subjected to the cost, inconvenience and distractions of a trial upon a conclusion of the pleader or to the hazard of a judgment against them based upon a jury's speculation as to motives." *Tenney*, 341 U.S., at 377 (internal quotation marks omitted).  Furthermore, it simply is "not consonant with our scheme of government for a court to inquire into the motives of legislatures." *Id.*  "We, therefore, hold that the Defendant in *Tenney* had acted in a legislative capacity even though he allegedly singled out the plaintiff for investigation in order to intimidate and silence the plaintiff and, in turn, prevent him from effectively exercising his constitutional right."  *Id.* at 371 (internal quotation marks omitted).

50.     Plaintiff's complaints are clearly directed at the legislative activities of the Board of Supervisors of Panola County Freshwater Supply District No. 1.  Plaintiff complains that his constitutional rights were violated when the Board of Supervisors adopted changes to the district's election procedures, including transitioning to four single-member districts and an at-large position into the assigning of Board Members to individual places such that the two Board Members who were elected in 2004 occupied Place 1 and the at-large position.  The Plaintiff claims that this decision deprived him of the right to vote and/or run for office in May of 2006. All the Plaintiff's complaints related to the election deal directly with legislative actions of the Board of Supervisors of the Panola County Freshwater Supply District No. 1.  The individual board members who have been sued all voted for the changes to the election procedure.[4]

51.     Plaintiff filed this lawsuit against four of the five members of the Board of Supervisors of Panola County Freshwater Supply District No. 1. Plaintiff did not sue the one board member whose votes he agreed with—Barbara Perritte. Plaintiff's claims against the individual board members are clearly based on their legislative actions. Barbara Perritte when asked in her deposition why she had not been sued, explained that it was because the Plaintiff approved of the way she voted:

> Q.     "Now, do you have any idea why you were not named as a party in the lawsuit?"
>
> A.     "Yes."
>
> Q.     "Why do you believe that to be the case?"
>
> A.     "Because I had voted against it, the election change from the at-large to the single-member districts."[5]

---

[4] Exhibits D, E, F, and G.
[5] Exhibit I

52.     The act of voting for an ordinance, policy or plan is quintessentially legislative.  *Bogan v. Scott-Harris*,  523 U.S. at 55.  The individual board members' votes for changes to the district's election procedures are clearly legislative acts for which they are entitled to legislative immunity.

53.     The individual board members have legislative immunity from Plaintiff's claim of deprivation of property rights. Plaintiff alleges in Paragraph 32 of Plaintiff's Second Amended Complaint that the board has since 2003 systematically refused to transfer leases when homes were sold and instead required the buyer to use a different lease form. Plaintiff's complaint is about policy. Plaintiff alleges that the board adopted a policy that applies to all lease transfers since 2003. The adoption a general policy is a legislative action for which the individual board members are protected by legislative immunity.

54.     As members of the Board of Supervisors of Panola County Freshwater Supply District No. 1, Defendants Jim Young, Tim Boone, Shirley Reed, and Douglas Baker are entitled to legislative immunity and Plaintiff's claims against them should be dismissed.

## Qualified Immunity

55.     The individual members of the Board of Supervisors of Panola County Freshwater Supply District No. 1 (Jim Young, Tim Boone, Shirley Reed, Douglas Baker) are entitled to qualified immunity.

56.     To the extent that Defendant Drew Nixon acted as a government official with regards to Plaintiff's allegations against him, he is entitled to qualified immunity.

57.      To the extent that Defendant Larry Fields acted as a government official with regards to Plaintiff's allegations against him, he is entitled to qualified immunity.

58.     Government officials are protected from liability by qualified immunity as long as their conduct does not violate a clearly established constitutional right of which a reasonable person

would have known. *Harlow v. Fitzgerald*,  457 U.S. 800 (1983); *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

59.     Fifth Circuit precedent requires that, once the defendant raises the defense of qualified immunity, the burden rests with the plaintiff to "'overcome the bar of qualified immunity'...by establishing that the official's allegedly wrongful conduct violated clearly established law." *Estate of Davis ex rel McCully v. City of North Richland Hills,* 406 F.3d 375, 380 (5th Cir. 2005).

60.     In *Siegert v. Gilley*, 500 U.S. 226 (1991), the Supreme Court established a two–prong test to establish qualified immunity: (1) has the plaintiff alleged a violation of a clearly established constitutional right by the defendant; if so; (2) was the defendant's conduct in question objectively reasonable.

61.     Plaintiff cannot satisfy the first prong of this test. Plaintiff has not alleged the violation of a clearly established constitutional right.

62.     Plaintiff's allegations of irregularities in the 2003 water board election do not implicate a right of the Plaintiff protected by the Constitution of the United States. *See Kasper v. Board of Election Commissioners of City of Chicago,* 814 F.2d 332, 342 (7th Cir. 1987); *Curry v. Baker,* 802 F.2d 1302, 1314 (11th Cir. 1986); *Hubbard v. Ammerman*, 465 F.2d 1169, 1176 (5th Cir. 1972).

63.     Furthermore, Plaintiff has waived any claim for any alleged election irregularities in 2003. Plaintiff failed to file an election contest.  Plaintiff failed to timely file a claim related to the 2003 election.  Plaintiff's claim regarding an alleged 2003 election irregularity is barred by the applicable statute of limitations and by latches.

64.     The board's canceling of the election scheduled for May of 2005 did not violate Plaintiff's constitutional rights. The board was not authorized to hold an election in 2005. Texas Water Code § 49.103 requires that members of the board of a water district serve for four years and that water district elections are held in even-numbered years.

65.      Plaintiff's allegations of unspecified violations of the Texas Election Code and/or election irregularities do not implicate a right of the Plaintiff protected by the Constitution of the United States. Election disputes of this nature are matters of state law for state courts to decide. *See Kasper v. Board of Election Commissioners of City of Chicago,* 814 F.2d 332, 342 (7th Cir. 1987); *Curry v. Baker,* 802 F.2d 1302, 1314 (11th Cir. 1986); *Hubbard v. Ammerman*, 465 F.2d 1169, 1176 (5th Cir. 1972).

66.     The initial rejection of Plaintiff's application for placement on the May 2006 ballot was not a violation of the Plaintiff's constitutional rights. Plaintiff submitted his application on January 10, 2006. It was initially rejected as being submitted prematurely. Plaintiff's application was then resubmitted and accepted on February 15, 2006. Plaintiff has suffered no harm from the initial albeit mistaken rejection of his application. *See Kasper v. Board of Election Commissioners of City of Chicago,* 814 F.2d 332, 342 (7th Cir. 1987); *Curry v. Baker,* 802 F.2d 1302, 1314 (11th Cir. 1986); *Thompson v. Woodall*, 819 F.2d 1052 (11th Cir. 1987); *Hubbard v. Ammerman*, 465 F.2d 1169, 1176 (5th Cir. 1972).

67.     The Plaintiff does not have a constitutionally protected right to vote and/or to run for an office that is not scheduled for election until 2008. Texas Water Code § 49.103 requires that members of the board of a water district serve for four years and allows for the creation of single-member districts. The board voted to make changes in the election process to bring the PCFSD#1 in compliance with the Texas Water Code and to create single-member districts. The

plan adopted by the board called for the elections of place 2,3, and 4 to be held in 2006 and the elections for place 1 and the at-large position to be held in 2008. The Texas legislature mandated four-year terms for water district board members. Plaintiff can vote for place 1 and the at-large position in May of 2008. Likewise, plaintiff can run for either the place 1 or the at-large position in 2008. A postponement of franchise due to the staggering of terms of office is not a constitutional violation. *Pate v. El Paso County, Texas,* 337 F. Supp. 95 (W.D. Tex. 1970) (*judgment affirmed* 400 U.S. 806 (1970) (redistricting plan that resulted in some voters having to wait four years until they could vote in a county commissioner's court election was not a violation of a constitutional right); *Carr v. Brazoria County, Texas*, 341 F.Supp. 155 (S.D.Tex. 1972) (*judgment affirmed* 468 F.2d 950 (5th Cir. 1972) (postponement of franchise due to the impact of staggered election cycle does not violate a constitutional right).

68.     Plaintiff has not alleged a clearly established violation of a constitutional right with regard to his claim for a depravation of property rights.

69.     A claim for breach of contract and/or breach of promise against a governmental entity does not rise to the level of a constitutional violation. *Sudeikis v. Chicago Transit Authority*, 774 F.2d 766, 770 (7th Cir. 1985).

70.     Plaintiff has not suffered any actual harm. Plaintiff has not sold, nor has he attempted to sell any property subject to a lease with PCFWSD # 1 in the last five years.[6] The terms of the Plaintiff's leases with PCFWSD # 1 have not been changed.[7] Plaintiff has never been denied financing based upon the terms of a lease agreement with PCFWSD # 1.[8] In fact, Plaintiff was able to re-finance his property in April of 2006.[9]

---

[6] Exhibit K—Admissions 1 and 2 to Defendants' First Request for Admissions.
[7] Exhibit M—Admission 3 to Defendants' Third Request for Admissions.
[8] Exhibit K—Admission 3 to Defendants' First Request for Admissions.
[9] Exhibit P

71.     Plaintiff has not alleged a violation of a clearly established constitutional right, and plaintiff's claims against the individual defendants should be dismissed. *Siegert v. Gilley*, 500 U.S. 226 (1991).

72.     As for the second prong of a qualified immunity analysis, Defendants conduct was objectively reasonable.

73.     The board's cancellation of the May 2005 election was objectively reasonable. Texas Water Code § 49.103 requires that a water districts' elections be held in even-numbered years.

74.     The board's adoption of single-member districts and one at-large position, the assignment of board members to those positions, and the scheduling of the 2006 and 2008 elections were objectively reasonable.

75.     Texas Water Code § 49.103 allows for the creation of single member districts.

76.     Defendants Jim Young (precinct 1) and Timothy Boone (at-large position) were elected to the board in May 2004. It is objectively reasonable to hold elections for precinct 1 and the at-large position in May of 2008 when their four-year terms expire.

77.     The above described election changes were submitted to the Department of Justice for preclearance review and the Department had no objection to the proposed changes.

78.     Plaintiff may disagree with the Defendants' actions with regards to the election procedures and terms of lease agreements, however, he has no evidence that the Defendants' actions were objectively reasonable.

79.     Since the Plaintiff cannot meet his burden to refute the defense of qualified immunity, his claims against the individual Defendants should be dismissed.

## No Evidence of a Constitutional Violation

80.     As outlined in paragraphs 60-71 above, Plaintiff cannot establish the violation of a constitutionally protected right. Even if taken as true, Plaintiff's allegations of election irregularities and a postponement of franchise are not violations of a constitutionally protected right. Plaintiff's § 1983 claims should be dismissed since Plaintiff has produced no evidence that his constitutional rights have be violated.

## Good Faith Defense

81.     To the extent that Defendant Drew Nixon acted as a private individual with regards to Plaintiff's allegations against him, he is entitled to a defense that his actions were in good faith. *See Wyatt v. Cole,* 994 F.2d 1113 (5th Cir. 1993)

82.      To the extent that Defendant Larry Fields acted as a private individual with regards to Plaintiff's allegations against him, he is entitled to a defense that his actions were in good faith. *Id.*

83.     Since Plaintiff has no evidence that either Defendant Nixon and/or Defendant Fields acted in bad faith, his claims against them as private individuals (if he has asserted or asserts any such claims) should be dismissed.

## Noerr-Pennington Doctrine

84.     If the Plaintiff is claiming that any of the individual defendants were acting in their individual capacity to encourage and/or propose that the PCFWSD#1 make changes in its elections procedures, then those individual defendants are entitled to Noerr-Pennington Immunity. *Bayou Fleet, Inc. v. Alexander*, 26 F.Supp.2d 894, 897 (5th Cir. 1998).

85.     If the Plaintiff is claiming that any of the individual defendants were acting in their individual capacity to encourage and/or propose that the PCFWSD#1 make changes to the terms

of their leases and/or adopt new procedures regarding lease transfers, then those individual defendants are entitled to Noerr-Pennington Immunity. *Id.*

86.     The Noerr-Pennington doctrine protects a private individual's First Amendment right to petition the government. *United Artists Theatre Circuit, Inc., v. Township of Warrington, PA*, 316 F.3d 392, 400 (3d Cir. 2003) ("principles relied upon [under the *Noerr-Pennington* doctrine] are not limited to antitrust liability" and"[t]he First Amendment right to petition extends to all departments of government . . . [t]he protection it affords thus applies . . . to petitioning state agencies."' *Gorman Towers, Inc. v. Bogoslavsky*, 626 F.2d 607, 615 (8th Cir. 1980) (section 1983) (landowners' secret meetings with city officials to petition for enactment of city ordinance to rezone plaintiff's property within doctrine); *Sawmill Products, Inc. v. Town of Cicero*, 477 F.Supp 636, 642 (N.D.Ill. 1979) (section 1983) (protesting presence of plaintiff's sawmill which was then shut down by town ordinance); *Weiss v. Willow Tree Civic Ass'n*, 467 F.Supp. 803, 816-18 (S.D.N.Y. 1979) (section 1983) (lobbying town officials and filing groundless judicial and administrative complaints to oppose zoning permit).

## Breach of Contract

87.     Plaintiff's two leases with the board were executed in 1994.

88.     None of the individual defendants were board members in 1994.

89.     The individual defendants cannot be liable in their individual capacities for a breach of contract claim. They are not parties to any contract or agreement with the Plaintiff.

90.     Plaintiff has no evidence that any of the individual defendants have made any legally binding promises to him.

91.     Plaintiff's breach of contract claim against the individual defendants should be dismissed.

## **Standing**

92.     Plaintiff does not have standing to bring a claim for depravation of property rights, for

breach of contract, or a claim for former board member Barbara Perritte.

93.     In order to have standing, "the plaintiff must have suffered an injury in fact – an invasion

of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent,

not conjectural or hypothetical." *United State v. Hays,* 515 U.S. 737, 742-743, 115 S.Ct. 2431,

2435 (1995). Plaintiff has not suffered an injury in fact.  Plaintiff's alleged injury is completely

hypothetical. Plaintiff has not sold, nor has he attempted to sell any property subject to a lease

with PCFWSD # 1 in the last five years.[10] Plaintiff has never been denied financing based upon

the terms of a lease agreement with PCFWSD # 1.[11] Plaintiff was able to re-finance his property

in 2006. The terms of the Plaintiff's leases with PCFWSD # 1 have not been changed.[12] Plaintiff

has not sought a change in the terms of his lease. Plaintiff has had no other leases with PCFWSD

# 1.[13]

94.     Plaintiff's complaint is not concrete and particularized.  When ask at his deposition, how

his property rights had been damaged, Plaintiff testified that he heard the board was going to

raise leases to $1500 a year although it "didn't turn out way".[14] In his deposition, Plaintiff also

speculated that it would be difficult for him to obtain financing because of the actions of the

board, however, he offered no actual evidence of this alleged injury.[15] In fact leases did not go up

and the Plaintiff was able to re-finance his property in April of 2006.[16]

---

[10] Exhibit F—Admissions 1 and 2 to Defendants' First Request for Admissions.
[11] Exhibit F—Admission 3 to Defendants' First Request for Admissions.
[12] Exhibit H—Admission 3 to Defendants' Third Request for Admissions.
[13] Exhibit L—Admissions 4, 5 and 6 to Defendants' Second Request for Admissions; and Exhibits N and O.
[14] Exhibit Q—Rice Depo p.17 ln. 25—p.18 ln. 18.
[15] Exhibit Q—Rice Depo p.25 ln. 18—p.26 ln.18.
[16] Exhibit P

95.    Plaintiff has fears and trepidations about what the board will do and when his fears don't come to pass, he invents a new danger. Now, Plaintiff claims the board made him a promise that he could change his six-month lease (Plaintiff's six-month lease term is an attempt to avoid property taxes[17]) into a 99-year lease. Plaintiff has not suffered an actual injury. Plaintiff is merely speculating that he will be injured in the future.

### Injunctive Relief

96.    Plaintiff's claims for injunctive relief have already been denied by the state district court.

97.    Plaintiff has no need for injunctive relief against any of the individual defendants in their individual capacity.

98.    Plaintiff has sued PCFWSD#1 so an injunction against the individual defendants in their official capacity would be redundant.

99.    The individual members of the Board of Supervisors of Panola County Freshwater Supply District No. 1 (Jim Young, Tim Boone, Shirley Reed, Douglas Baker) are entitled to legislative immunity.

100.   Defendant Nixon no longer works for PCFWSD#1 in any capacity so an injunction against him would be meaningless.

101.   The injunction sought by Plaintiff is retrogressive. Plaintiff seeks the return to an at-large election scheme that has not been precleared by the Department of Justice. The status quo of four single-member districts and one at-large position was submitted to the Department of Justice for preclearance and the Department of Justice did not object to the plan.

102.   Defendant Shirley Reed is the first African-American to serve on the Board of Supervisors of Panola County Freshwater Supply District No. 1.

---

[17] See *Panola County Appraisal Review Board v Pepper*, 936 S.W. 2d 10 (Tex. App.—Texarkana 1996); *Panola County Fresh Water Supply District Number One, v. Panola County Appraisal District*,  2004 WL 1724823 (Tex. App.—Texarkana 2004)(Not Reported).

103.    The Plaintiff's at-large election plan will almost certainly result in no minority representation on the board.

104.    Single-member district elections are generally preferred and are generally more equitable than at-large elections.  *See Chapman v. Meier,* 420 U.S. 1, 95 S.Ct. 751 (1975).

105.    Plaintiff has not provided the Court with any evidence demonstrating how a return to an at-large election scheme will impact minority voters.

106.    It is essential for the Court to determine the impact on minority voters prior to ordering a potentially retrogressive voting change such as a change to at-large districts. *McDaniel v. Sanchez,* 452 U.S. 130, 149, 101 S.Ct. 2224 (1981) (although court-devised plans are not subject to preclearance requirements, "in fashioning the plan, the court should follow the appropriate Section 5 standards, including the body of administrative and judicial precedents developed in Section 5 cases") *See Puerto Rican Legal Defense & Education Fund, Inc. v. Grant,* 796 F.Supp. 681, 691 (E.D.N.Y. 1992)("a court-drawn plan should be drafted so that it will not lead to retrogression in the position of a racial or language minority group with respect to their opportunity to exercise the electoral franchise effectively")

107.    Since the Plaintiff has produced no evidence regarding how his election plan will impact minority voters, his request for an injunction should be denied.

### Declaratory Judgment

108.    Plaintiff has no need for declaratory relief against any of the individual defendants in their individual capacity.

109.    Plaintiff has sued PCFWSD#1 so a declaratory judgment against the individual defendants in their official capacity would be redundant.

110.    The individual members of the Board of Supervisors of Panola County Freshwater Supply District No. 1 (Jim Young, Tim Boone, Shirley Reed, Douglas Baker) are entitled to legislative immunity.

111.    Defendant Nixon no longer works for PCFWSD#1 in any capacity so a declaratory judgment against him would be meaningless.

112.    Under Texas law a declaratory judgment is not available to resolve issues already pending in the same suit before the Court. *BHPPet. Co. v. Millard,* 800 S.W.2d 838, 841 (Tex. 1990); *Musgrave v Owen,* 67 S.W.3d 513, 520 (Tex.App.—Texarkana 2002); *Boatman v. Lites,* 970 S.W.2d 41, 43 (Tex.App.—Tyler 1998).  Plaintiff's declaratory judgment action does not address any issues other than ones already addressed in Plaintiff's allegations that his constitutional rights were violated, his breach of contract claim and his claims for injunctive relief.

113.    Further, Plaintiff's claim for declaratory relief should be dismissed because all necessary parties are not parties to the litigation. Texas Civil Practice & Remedies Code § 37.006 requires that any person with a claim or interest that would be affected by the declaration must be made parties to the litigation.  J.R. Jacks is no longer a party to the litigation and the Plaintiff has not made former board member Barbra Perritte a party to the litigation.

### Summary

114.    Plaintiff's claims against the individual Defendants in their official capacity should be dismissed as redundant.

115.     Plaintiff's claims against the individual board members should be dismissed on the basis of legislative immunity and/or qualified immunity.

116.    Plaintiff's claims against the Defendant Fields and Nixon should be dismissed on the basis of qualified immunity and/or a good faith defense.

117.    Plaintiff's § 1983 claims should be dismissed because Plaintiff has produced no evidence of a violation of a constitutional right.

118.    Plaintiff's claims against the individual Defendants should be dismissed based on the Noerr-Pennington doctrine.

119.    Plaintiff's claims for depravation of property rights and for breach of contract should be dismissed for lack of standing.

120.    Plaintiff's claims for Declaratory Judgment should be dismissed.

121.    Plaintiff's election plan is retrogressive and Plaintiff's request for an injunction should be denied and dismissed as to all Defendants.

**Prayer**

122.    Defendants respectfully request that the Court grant their Motion for Summary Judgment and dismiss all claims against the individual Defendants and deny and dismiss Plaintiff's claims for injunctive and declaratory relief as to all Defendants.

Respectfully submitted,

WRIGHT & GREENHILL, P.C.
221 West 6th Street, Suite 1800
Austin, Texas 78701
512/476-4600
512/476-5382 (Fax)

By:_____/s/_____
    Matthew C. Waddell, lead attorney
    State Bar No. 00791861
    e-mail: mwaddell@w-g.com
ATTORNEYS FOR DEFENDANTS

## **CERTIFICATE OF SERVICE**

I hereby certify that I filed the foregoing document on this 13th day of March 2007 with the Clerk of Court using the CM/ECF system which will send notification to the following:

Chris Taylor
AKIN GUMP STRAUSS HAUER & FELD
300 West 6th Street, Suite 2100
Austin, Texas 78701

_____/s/_____
Matthew Waddell

23