IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| TOMMY RICE and<br>J.R. JACKS, JR. | §<br>§<br>§<br>§ | |
| VS. | § | CAUSE NO. 6:06cv341 |
| ROGER WILLIAMS, ET AL | §<br>§<br>§ | |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF BOARD OF SUPERVISORS OF PANOLA COUNTY FRESHWATER SUPPLY DISTRICT NUMBER ONE'S MOTION FOR SUMMARY JUDGMENT**

Now comes the Board of Supervisors of Panola County Freshwater Supply District No. 1, Defendant herein, by and through their attorneys of record, and file this their Reply Brief in support of their above referenced Motion for Summary Judgment and would respectfully show the Court as follows:

Statement of Material Facts

1. Plaintiff's Response did not challenge most of Defendant's Statement of Material Facts.

2. For example, Plaintiff did not refute the following:  a) Plaintiff does not have a 99-year lease with the PCFWSD #1; b) Plaintiff has two six-month leases with PCFWSD #1; c) Plaintiff has not sought to transfer any lease he has with PCFWSD #1; d) The terms of the Plaintiff's leases have not been changed; e) Plaintiff has not requested any changes to the terms of his leases; f) Plaintiff obtained a home equity loan on his property in 2006; and g) Plaintiff will be able to vote and/or run for office in May of 2008.

3. Defendants request that the Court accept its uncontroverted Statement of Materials Facts as being admitted to exist without controversy.  Local Rule CV-56(c).

<u>Plaintiff's Objections</u>

4.      Plaintiff's objects to the Defendant's affidavits because they allegedly do not "declare that the statements that they contain are true and correct."

5.      All of Defendant's affidavits were sworn to and subscribed before a notary.  Each of Defendant's affidavits contains the following language: "…*who being by me duly sworn on oath deposed and said the following…*" A notarized affidavit is a sworn statement and the affiant is swearing that their statements contained in the affidavit are true and correct. There is no requirement in federal law or Texas law that the body of an affidavit must contain the words "true and correct."

6.      An affidavit is "a statement reduced to writing and the truth of which is sworn to before someone who is authorized to administer an oath." *Pfeil v. Rogers,* 757 F.2d 850, 859 (7th Cir. 1986)(citing cases).

7.      Plaintiff has objected Defendant's Exhibits D and E as hearsay.  Plaintiff does not identify what portions of these affidavits he contends are hearsay. Clearly it is not hearsay for the individual board members to report when they were elected to the board and to describe their votes for the election plan, etc.

8.      Plaintiff objects to Exhibits A – C as hearsay.  These exhibits are not offered for the truth of the matter asserted.  Defendant is offering these exhibits to demonstrate that the communications and consultations contained in these exhibits took place.  The fact that the letters exist is evidence that Defendant obtained legal advice regarding the applicable election laws. Defendant had no reason to believe its actions might violate a constitutional right of the Plaintiff.

10.     Defendant requests that the Court take judicial notice of the fact that the Department of Justice had no objection to the Board's election plan.

Defendants' Objections

11.     Defendants' object to Plaintiff's Exhibit K and the portion of Plaintiff's Exhibit C that is a letter from Ann McGeehan of the Texas Secretary of State's Office to former Plaintiff J.R. Jacks. The letter is hearsay. In fact it contains several layers of hearsay.  The letter is unreliable because is based on information submitted by Mr. Jacks. It was not the result of an even-handed hearing where the water district was able to submit information to Ann McGeehan.

12.     Should the Court find that the letter is admissible for any reason the Defendant points out that Ms. McGeehan (with only Mr. Jack's information to work with) wrote the following:

> "One possible method of adjustment would be for a legislative act or court order to specify that those individuals who were up for reelection in 2005 should be up for reelection in 2006, while those individuals who were up for reelection in 2006 should be up for election in 2008. The individuals elected in 2004 would therefore serve a 4-year terms (as the law requires) while the individuals elected in 2003 would serve 3-year terms in order to re-stagger the new terms of office for future elections." McGeehan letter p. 8.

This is exactly what the board had already done. The positions of Defendants Young and Boone—who were elected in 2004—were  (and are) scheduled for election in 2008 and the election for the other three positions was scheduled for 2006. Of course, Mr. Jacks withheld the above information from Ms. McGeehan in order to convey the impression that some sinister manipulation of the terms of office had occurred.

13.     Defendant objects to Plaintiff's Exhibit D (the deposition of the Plaintiff) pages 25 through 28 as being hearsay. Defendant objects to any testimony that a person can't get loans on "these leases" as being hearsay. Defendant's object that Plaintiff has no personal knowledge of whether loans are available on any leases other than his own. Plaintiff's opinion testimony that

Fannie Mae will not loan money on "these leases" is unreliable. Plaintiff has no training or education to assert what leased property Fannie Mae of FHA would approve a loan for. Plaintiff has produced no evidence that FHA or Fannie Mae will loan money in the State of Texas on a leased single occupancy home regardless of the terms of the lease. Plaintiff has not established that he has the personal knowledge or expertise to testify about such matters.

14.   Any testimony that other people have told Plaintiff that transfers of their leases have been denied is hearsay.

15.   Defendant objects to the following excepts from Plaintiff's Exhibit F (the transcript from the Temporary Injunction Hearing):

> p. 40 ln. 1-23 [hearsay]; p. 42 ln. 3-19 [hearsay & relevance]; p. 43 ln. 5-13 [hearsay]; p. 45 ln. 1—p. 46 ln. 18 [hearsay]; p. 47 ln. 2—p. 48 ln. 5. [hearsay]; p. 49 ln. 2—p. 50 ln. 4 [hearsay].

16.   Defendant objects to Plaintiff's Exhibit I (Expert Report of Clay Allen) on the basis that it is not competent summary judgment evidence. The expert report is not in the form of an affidavit and is not sworn to and as such is not admissible as summary judgment evidence. Fed. R. Civ. P. 56(c) and (e). Defendant objects that Plaintiff's Exhibit I is not reliable does not meet the requirements for admissibility under FRE 702.

Standing

17.   Plaintiff has not produced any competent summary judgment evidence that he has standing to bring a claim for deprivation of property rights or a claim for breach of contract.

18.   Plaintiff has suffered no actual harm to his property values. The terms of his leases have not been changed or modified. Plaintiff was able to obtain a home equity loan on his leased property in 2006.

19.     Plaintiff claims that the diminished value of his land is "*current and existing* and provides the basis for standing under § 1983 related to Rice's lease." p. 5 of Plaintiff's Response to Defendant's Motion for Summary Judgment (emphasis added). However, the evidence shows that Plaintiff's property value has not declined.[1]

20.     Plaintiff has produced no evidence that his property values have actually declined.

21.     Plaintiff has produced no evidence of a breach of contract.

22.     Plaintiff does not cite one term of his lease that has been breached by the Defendant.

23.     Plaintiff has not sought to transfer his lease. It is the Defendant's position that if Plaintiff wanted to transfer his existing lease and he had a buyer who wanted to assume that existing lease, that the Defendant would approve the transfer. Plaintiff has not sought to transfer of his lease and such a claim is not ripe for adjudication.

Texas Water Code § 49.103

24.     Plaintiff argues that Texas Water Code § 49.103 does not apply to the PCFWSD No. 1 because (according to Plaintiff's argument) the PCFWSD No. 1 became a special law district when House Bill 2148 was passed in 1977.

25.     Texas Water Code § 49.002(a) does state: "this chapter applies to all general and special law districts to the extent that the provisions of this chapter to not directly conflict with a provision in any other chapter of this code or any Act creating or affecting a special law district."

26.     However, in 1995, the Texas Legislature sought to create uniform election dates for water districts and enacted Texas Water Code § 49.103[2] mandating four-year terms and elections in even-numbered years. This provision obviously applies to the PCFWSD No. 1.[3]

---

[1] Defendant's MSJ Exhibit N (Plaintiff's Property Tax History). Interestingly, Plaintiff's expert found that property values for leased lake property were essentially the same as that of fee simple lake property.
[2] Defendant's MSJ Exhibit F (Texas Water Code § 49.103)

27.     Texas Water Code § 49.103(e) specifically states: "Section 49.002[4] notwithstanding, in all area of conflict the provisions of Subsections (a)[four-year terms] and (b)[even-number year elections] shall take precedence over all prior statutory enactments."

28.     The PCFWSD No. 1 must have four-year terms and hold elections only in even-numbered years for its directors.

29.     Plaintiff argues that House Bill 2148 should be interpreted to mean that **only** House Bill 2148 and Chapter 53 of the Texas Water Code apply to elections for the PCFWSD No. 1. This is inconsistent with Plaintiff's allegation that Defendants did not comply with the Texas Election Code because if **only** House Bill 2148 and Chapter 53 of the Texas Water Code applied to elections for the PCFWSD No. 1 then the Texas Election Code would not apply to the Defendant.

30.     House Bill 2148 by referring to Chapter 53 of the Texas Water Code does not exclude the application of other provisions of Texas statutes that are not in conflict with Chapter 53.

31.     Chapter 53 of the Texas Water Code, at § 53.103 provides that "A district has the powers of government and authority to exercise the rights, privileges and functions given to it by this chapter or by any other state law."

32.     Neither Chapter 53 of the Texas Water Code nor House Bill 2148 prohibits single-member districts.

33.     House Bill 2148 did not freeze the election procedures of the PCFWSD No. 1 for all time. Since 1977 the Texas Legislature has made several changes the election procedures that

---

[3] The only districts to which Texas Water Code § 49.103 does not apply are special law districts that are not required to hold public elections for directors and special utility districts operating under Chapter 65 of the Texas Water Code.  *See* Texas Water Code § 49.103(f)(1)(2).
[4] Texas Water Code § 49.103(e) trumps Section 49.002.

apply to water districts including the PCFWSD No. 1. One of those changes is Texas Water Code § 49.103(d), which authorizes the adoption of single-member districts.

34. Plaintiff also argues that a candidate need only live in the district and not in the precinct of a particular single-member district. Even if Plaintiff is correct, Plaintiff has not been harmed. Plaintiff has no standing to bring a claim for Barbara Perritte. Neither Plaintiff nor Ms. Perritte filed an election contest. Plaintiff did not seek to run for place 2, 3 or 4, rather he is challenging the adoption of single-member districts.

35. Plaintiff asserts that Texas Water Code § 49.103 absolutely required the Board to draw lots to stagger its terms. In fact Texas Water Code § 49.103(g) states that a district "**may** require directors of the district to draw lots to achieve staggered term" (emphasis added). There is no absolute requirement that the Board draw lots to achieved staggered terms.

36. In any event, Plaintiff was not harmed by the Board voting to assign places to achieve staggered terms rather than drawing lots. Plaintiff does not have standing to bring a claim for Barbara Perritte. The Board's decision to assign places rather than drawing lots did not violate a constitutionally protected right of the Plaintiff.

37. Plaintiff arguments about state law election procedure do not rise to the level of a constitutional claim. *See Kasper v. Board of Election Commissioners of City of Chicago*, 814 F.2d 332, 342 (7th Cir. 1987); *Curry v. Baker,* 802 F.2d 1302, 1314 (11th Cir. 1986); *Hubbard v. Ammerman*, 465 F.2d 1169, 1176 (5th Cir. 1972).

38. Plaintiff has not been denied the right to vote. Plaintiff can vote in 2008. At most Plaintiff's franchise has been delayed two-years and that does not support a § 1983 claim. *Pate v. El Paso County, Texas,* 337 F. Supp. 95 (W.D. Tex. 1970) (*judgment affirmed* 400 U.S. 806 (1970) (redistricting plan that resulted in some voters having to wait four years until they could

vote in a county commissioner's court election was not a violation of a constitutional right); *Carr v. Brazoria County, Texas*, 341 F.Supp. 155 (S.D.Tex. 1972) (*judgment affirmed* 468 F.2d 950 (5th Cir. 1972) (postponement of franchise due to the impact of staggered election cycle does not violate a constitutional right).

39.     The precincts used by the Board are the same used by the County Commissioners' Court and they have been reviewed by the Department of Justice. The precinct lines do not improperly dilute Plaintiff's vote. In fact, it is the Plaintiff who is demanding a return to an at-large system that will dilute the voting power of minorities. The current election procedures (single-member districts with one at large position) are fundamentally fair. Minority voters will suffer a fundamentally unfair dilution of their voting rights if the Board's decision is overturned and an at-large scheme is adopted.

<u>Property Devaluation and Breach of Contract Claims</u>

40.     As argued above in paragraphs 17-23, Plaintiff has not suffered any actual harm to his property values. The Board is willing to approve the transfer of Plaintiff's lease to a willing buyer. Plaintiff has not requested such a transfer of his lease.

41.     Plaintiff cites a 1998 letter from then Board Chairman J.R. Jack's (Plaintiff's Exhibit G) for the proposition that the Board has made an enforceable promise to Plaintiff that he can change to a 99-year lease. However, the letter clearly states that the leaseholder must notify the Board by 11/06/98 if the leaseholder wants to change his lease. If Plaintiff wanted a 99-year lease, he should have notified the Board prior to 11/06/98. Plaintiff chose to keep his six-month lease.[5]

---

[5] The six-month lease was designed to avoid property taxes. See *Panola County Appraisal Review Board v Pepper*, 936 S.W. 2d 10 (Tex. App.—Texarkana 1996).

42. Furthermore, the 1998 letter does not represent an enforceable agreement. Plaintiff signed his lease in 1994. Plaintiff gave no consideration in exchange for an option to change to a 99-year lease.

43. Plaintiff claims the Board adopted policies in 2003 that have harmed his property value, yet he has produced no evidence that his property value has actually declined since 2003.

## Summary

44. In order to survive summary judgment, the Plaintiff must do more than allege issues of material fact; he must go beyond the pleadings and by affidavits, depositions, answers to interrogatories, and admissions, on file designate specific facts demonstrating that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Auguster v. Vermillion Parrish School Bd.*, 249 F.3d 400, 402 (5th Cir. 2001).

45. Plaintiff has failed to produce evidence that there is a genuine issue for trial regarding his § 1983 claims.

46. Plaintiff has failed to produce any evidence that he has suffered any damage to his property values.

47. Plaintiff has failed to produce evidence of a breach of contract.

48. Plaintiff has failed to produce evidence to support a genuine issue for trial against Defendant the Board of Supervisors of PCFWSD No. 1 and his claims against the Defendant should be dismissed.

## Prayer

49. Defendant the Board of Supervisors of PCFWSD No. 1 respectfully requests that the Court grant their Motion for Summary Judgment and dismiss all of Plaintiff's claims against the Defendant.

Respectfully submitted,

WRIGHT & GREENHILL, P.C.
221 West 6th Street, Suite 1800
Austin, Texas 78701
512/476-4600
512/476-5382 (Fax)


By: _____/s/_____
    Matthew C. Waddell, lead attorney
    State Bar No. 00791861
    e-mail: mwaddell@w-g.com
    ATTORNEYS FOR DEFENDANTS


CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing document on this 27th day of April 2007 with the Clerk of Court using the CM/ECF system, which will send notification to the following:


Chris Taylor
AKIN GUMP STRAUSS HAUER & FELD
300 West 6th Street, Suite 2100
Austin, Texas 78701

_____/s/_____
Matthew Waddell