IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| TOMMY RICE | § | |
| | § | |
| v. | § | |
| | § | |
| BOARD OF SUPERVISORS OF | § | CIVIL ACTION NO. 6:06CV341 |
| PANOLA COUNTY FRESHWATER | § | |
| SUPPLY DISTRICT NO. 1, | § | |
| TIMOTHY BOONE, JAMES YOUNG, | § | |
| DOUGLAS BAKER, SHIRLEY REED, | § | |
| DREW NIXON, AND LARRY FIELDS | § | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO SUMMARY JUDGMENT ON CLAIMS
RELATED TO TEXAS ELECTION AND WATER CODES**

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................1

STATEMENT OF GENUINE ISSUES OF FACT ..................................................4

STATEMENT OF GENUINE ISSUES OF LAW ...................................................6

SUMMARY JUDGMENT EVIDENCE..................................................................6

RELEVANT FACTUAL BACKGROUND.............................................................8

ARGUMENT & AUTHORITIES...........................................................................11

I.  Defendants Violated the Law by Failing to Comply with the Special Law (House
    Bill 2148) and Chapter 53 of the Texas Water Code...................................11

II. Alternatively, Only Texas Water Code § 49.103(a) and (b) Discussing Four-Year
    Terms and the Uniform Election Date Could Apply to the Board's Elections. .................12

III. Defendants Violated the Texas Water and Elections Codes by Extending the Terms
     of Board Members Past 2006.....................................................................12

IV. Defendants Violated the Texas Water and Elections Codes by Assigning
    Themselves to Single-Member Districts.......................................................13

V.  Defendants Violated the Texas Water and Elections Codes by Deciding Which of
    Their Own Positions Would be Up for Election in 2006. ..............................15

VI. Defendants Violated the Texas Water and Elections Codes by Engaging in a
    Scheme to Divide the Water District into Single-Member Districts in a Manner
    that was Not Equitable for the Voters in the Individual Districts and the District as
    a Whole. ....................................................................................................16
    A.  The Summary Judgment Evidence Shows that Defendants Did Not
        Adequately Describe the Geographic Boundaries of the Single-Member
        Districts. ...........................................................................................17
    B.  The Summary Judgment Evidence Shows that Defendants' Division of the
        Water District into Single-Member Districts Was Inequitable Because it
        Prevented Only Residents of Precinct 1 from Voting for Four Years. ..................17
    C.  The Summary Judgment Evidence Shows that Defendants' Division of the
        Water District into Single-Member Districts Was Inequitable Because the
        Adoption of the County Commissioners' Precincts Was Not Equitable for
        the Residents of Precinct 1 or the Water District as a Whole. ...............19

VII. Plaintiff's Claims are Not Barred by Any Affirmative Defenses.........................20
     A.  Plaintiff's Claims are Not Barred by the Statute of Limitations...........................20
     B.  Plaintiff's Claims are Not Barred by a Failure to Exhaust Available
         Remedies...........................................................................................22

CONCLUSION.......................................................................................................23

As requested by the Court, Plaintiff Tommy Rice ("Rice") files this response in opposition to potential summary judgment on his claims for declaratory judgment under and violation of the Texas Water and Election Codes, respectfully showing the Court as follows.

## INTRODUCTION

Regardless of whether the Board's elections are governed by the Special Law or Chapter 49 of the Water Code, the Defendants' changes to the long-standing process for electing Board members create genuine issues of fact that must be tried to the jury.

Regardless of the applicable law, the Defendants' decisions to extend the terms of certain Board members, to self-select which of their own positions were eligible for election in each year, to appoint members to represent single-member districts where they did not live, and to create single-member districts designed to discriminate against specific residents raise material fact issues that cannot be dismissed through summary judgment.

Defendants' have created a scheme that only permits Plaintiff and those like him who live near the lake to run or vote in <u>every other Board election</u>.  In contrast all other county residents are able to run and vote in <u>every</u> Board election.  This patently unfair election scheme that singles out a particular group and unfairly excludes them from the electoral process violates Texas law.

The Water Board was created to manage Lake Murvaul.  Because most of the residents who live around the lake live on land that is leased from the Board, the people, like Plaintiff Mr. Rice who live near the lake have always had a keen interest in the Board's operations and management of the lake.  Because of their proximity to the lake and dependence on the Board, people like Mr. Rice have always been the most active participants in Board elections.  Residents who do not live near the lake rarely know of the Board's actions or vote in Board elections.

Until recently, every Board election was open to all voters throughout Panola County, and anyone in the county could run for any seat on the Board.  In late 2004 and early 2005, considerable controversy grew concerning the way that the Board was managing the lake and the land around it.  Attendance at Board meetings spiked so high that meetings had to be held outdoors to accommodate all of the people who wanted to attend.  The overwhelming majority of people attending the meetings lived around the lake.  In response, Defendants began a systematic plan to exclude those who lived near the lake from participating in the political process.  It began when the Board limited and then eliminated the opportunity for public comment at meetings, and continued when the Board changed the election scheme to shut the lake residents out of the election process.

Because of the dissatisfaction with the Board's management of the lake, in early 2005, several people who live near the lake, including Mr. Rice, submitted applications to run for election to the Board in the 2005 election.  The Board originally rejected Mr. Rice's applications under the pretext that he could not run for office unless he owned land in the District.  After State officials confirmed that no such requirement existed, the Board was forced to accept Mr. Rice's application.  Shortly thereafter, in March 2005, the Board summarily announced that it was canceling the 2005 election.  The Board claimed that a law that the Board had ignored for ten years required the change.  Interested candidates who lived around the lake, including Mr. Rice, were told that they would be able to run for election in 2006.

In January and February 2006, at least seven lake residents, including Mr. Rice, filed applications to run for seats on the Board.   On March 1, 2006, these candidates learned through a newspaper article, that the Board had decided that no one who lived near the lake would be allowed to run for election in 2006.  The Board had previously decided to divide the county into

4 single-member districts, with specific geographic boundaries, and one at-large district. Everyone who lives around the lake was assigned to District #1.  However, Mr. Rice did not learn until reading the paper on March 1, 2006 that the Board decided that District # 1 and the at-large district would not be up for election again until 2008.  The decision to limit the positions up for election in 2006 was never voted on or discussed in any open meeting.

The combination of the Defendants' actions have prevented the Plaintiff and those who live near him in the newly-created Board District #1 from running or voting for office from 2004 through 2008.  Defendants claim that Plaintiff has not been harmed because he will finally be able to run or vote in May of 2008.  However, because of the way the districts were created and election dates were assigned, the residents of <u>every other district</u> except District #1 were and will continue to be able to run for office and vote in <u>every election</u>.  But the residents of District # 1 have been excluded from participating in the election process from 2005 to 2008, **and in the future, the residents of District # 1 will only be allowed to participate in <u>every other election</u>**.  The Defendants' calculated plan to marginalize and exclude the residents of District #1 from the political process violate the applicable election laws and have prevented Plaintiff and others who have the most interest in the Board's operations from running or voting since 2004.

Plaintiff has sought assistance from various government entities.  While each recognized that the changes likely violated Texas laws, they all suggested that Plaintiff needed to file a lawsuit and get a court order to obtain relief.  As a last resort, Plaintiff filed this suit.

If the Defendant's actions are approved by the Court, the residents of Precinct # 1 will be permanently excluded from participating in half of the Board's elections, while the residents of every other precinct will be permitted to participate in all elections.  There is no standard under

PLAINTIFF'S RESPONSE IN OPPOSITION TO SUMMARY JUDGMENT ON
CLAIMS RELATED TO TEXAS ELECTION AND WATER CODES
683341.0001 WEST  6096912 v2

PAGE 3

which this outcome can be characterized as fair or equitable, and there is no doubt that this arrangement violates Texas law.

Plaintiff should be permitted to try his case to a jury.

## STATEMENT OF GENUINE ISSUES OF FACT

1.     Whether Defendants' cancellation of the 2005 election of the Board, after 10 years of ignoring the law used as justification, was fair and equitable in light of numerous applications for the 2005 election from residents who live near Lake Murvaul.

2.     Whether Defendants acted within their authority by extending the term of Defendant Baker, who was elected to a two-year term in 2003, to 2006.

3.     Whether Defendants acted within their authority by extending the terms of Defendants Young and Boone, who were elected to two-year terms in 2004, to 2008.

4.     Whether Defendants decision to extend the terms of Defendants Young and Boone, who were elected to two-year terms in 2004, to 2008, knowing that it would prevent only Plaintiff and other residents near Lake Murvaul from running or voting for four years while all others were able to run or vote in all elections, was fair and equitable.

5.     Whether Defendants acted within their authority by determining which of their own positions would be up for election in 2006, knowing that it would prevent only Plaintiff and other residents near Lake Murvaul from voting or running in any Board election for four years while all others were able to run or vote in all elections.

6.     Whether Defendants' determination of which their own positions would be up for election in 2006, knowing that it would prevent only Plaintiff and other residents near Lake Murvaul from voting or running in any Board election for four years while all others were able to run or vote in all elections, was fair and equitable.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO SUMMARY JUDGMENT ON**
**CLAIMS RELATED TO TEXAS ELECTION AND WATER CODES**
683341.0001 WEST  6096912 v2

**PAGE 4**

7.     Whether Defendants' determination of which their own positions would be up for election in 2006, knowing that it would permit only Plaintiff and other residents near Lake Murvaul to vote or run in all future Board elections every four years while all others were able to run or vote in all elections, was fair and equitable.

8.     Whether Defendants acted within their authority by appointing themselves to represent each single-member district, including appointing one Board member to represent a single-member district in which she did not reside.

9.     Whether Defendants' decision to appoint themselves to represent each single-member district, knowing that it would prevent only Plaintiff and other residents near Lake Murvaul from voting or running in any Board election for four years while all others were able to run or vote in all elections, was fair and equitable.

10.     Whether Defendants adequately described the geographic boundaries of their newly-created single-member districts.

11.     Whether Defendants' division of the Water District into single-member districts, knowing it would prevent only Plaintiff and other residents near Lake Murvaul from running or voting in the 2006 election while all others were able to run or vote in all elections, was fair and equitable for the electors within such districts and within the district generally.

12.     Whether Defendants' division of the Water District into single-member districts, knowing it would allow only Plaintiff and other residents near Lake Murvaul to run or vote in all future elections every four years while all others were able to run or vote in all future elections, was fair and equitable for the electors within such districts and within the district generally.

13.     Whether Defendants' apparent adoption of the County Commissioners' precinct boundaries in their division of the Water District into single-member districts, despite the

different interests and roles of the two political subdivisions, was fair and equitable for the electors within such districts and within the district generally.

## STATEMENT OF GENUINE ISSUES OF LAW

1.       Whether the Special Law, House Bill 2148, applied to the 2005, 2006 or 2007 elections of the Board.

2.       Whether Chapter 49 of the Texas Water Code, or any portion of it, applied to the 2005, 2006 or 2007 elections of the Board.

3.       Whether Defendants had the authority under the Texas Water or Election Codes to cancel the 2005 election of the Board.

4.       Whether Defendants had the authority under the Texas Water or Election Codes to extend the term of Defendant Baker, who was elected to a two-year term in 2003, to 2006.

5.       Whether Defendants had the authority under the Texas Water or Election Codes to extend the terms of Defendant Young and Defendant Boone, who were elected to two-year terms in 2004, to 2008.

6.       Whether Defendants had the authority to determine which of their own positions would be up for election in 2006.

7.       Whether Defendants had the authority under the Texas Water or Election Codes to appoint the then-existing Board members to represent each single-member district.

8.       Whether Defendants had the authority under the Texas Water or Election Codes to divide the Water District into single-member districts.

## SUMMARY JUDGMENT EVIDENCE

In support of this response, Rice submits the following exhibits, which are incorporated by reference:

| | |
|---|---|
| Exhibit A: | Affidavit of Tommy Rice; |
| Exhibit B: | Affidavit of J.R. "Dickie" Jacks; |
| Exhibit C: | True and correct excerpts of the deposition of Tommy Rice; |
| Exhibit D: | True and correct excerpts of the deposition of Barbara Perritte; |
| Exhibit E: | True and correct excerpts from the Hearing on Temporary Injunction; |
| Exhibit F: | True and correct copy of House Bill 2148; |
| Exhibit G: | True and correct copy of February 15, 2006 letter from Ann McGeehan, Director of Elections, Office of the Texas Secretary of State; |
| Exhibit H: | True and correct copy of the Board minutes for the November 8, 2005 meeting; |
| Exhibit I: | True and correct copy of the Board minutes for the December 13, 2005 meeting; |
| Exhibit J: | True and correct copy of the Board minutes for the February 9, 2006 meeting; |
| Exhibit K: | True and correct copy of the Board minutes for the April 11, 2006 meeting; |
| Exhibit L: | True and correct copy of the Board minutes for the October 10, 2006 meeting; |
| Exhibit M: | Water Auxiliary Laws, Table II; |
| Exhibit N: | True and correct copy of the Board minutes for the March 8, 2005 meeting; |
| Exhibit O: | True and correct copy of the Board minutes for the September 12, 1972 meeting; |
| Exhibit P: | True and correct copy of the Board minutes for the February 13, 1973 meeting; |
| Exhibit Q: | True and correct copy of the Board minutes for the February 10, 1976 meeting; |
| Exhibit R: | True and correct copy of the Board minutes for the July 10, 1978 meeting; |
| Exhibit S: | True and correct copy of January 21, 2006 letter from Barbara Perritte to Drew Nixon; |

Exhibit T:    True and correct copy of a map of Panola County Fresh Water Supply District No. 1;

Exhibit U:    True and correct excerpts of the deposition of James Young.

## RELEVANT FACTUAL BACKGROUND

In 1977, the Texas Legislature enacted a law specific to the Board that established the procedure for elections of Board supervisors (the "Special Law"). *See* Ex. F. The Special Law states that only its provisions and the provisions of Chapter 53 of the Texas Water Code apply to the election of supervisors of the Board. *Id.* From 1997 until 2004, the Board held elections under the rules contained in the Special Law. *See* Ex. E. at 20:21-24.

In 1995, the Texas Legislature amended Chapter 49 of the Water Code to provide altered election procedures for most water districts. From 1995 through 2004, Defendants ignored Chapter 49 and continued to follow the election procedures set forth in the Special Law. *See* Ex. E. at 20:21-21:2.

In May 2003, Defendant Baker and two others were elected to two-year terms for at-large Board positions. Ex. E at 19:2-5. Mr. Baker's term was scheduled to expire in May 2005. Ex. E at 19:16-18.

In May 2004, Defendants Boone and Young were elected to two-year terms for at-large Board positions. Ex. E at 90:15-18. Their terms were scheduled to expire in May 2006. *Id.*

In February 2005, Mr. Rice applied to run for a position on the Board in the then-upcoming May 2005 election. Ex. A ¶ 3. Defendants rejected Mr. Rice's application on the pretext that he was not qualified to run because he leased, instead of owned his land. *Id.* After the Defendants were told that, by law passed in 1999, any registered voter could run for a position on the Board, they were forced to accept Mr. Rice's application to run in the 2005 election. *Id.*

In March 2005, shortly after realizing they had no alternative but to accept Plaintiff's application to run for election, Defendants simply cancelled the 2005 election. Ex. A ¶ 3; Ex. N. Defendants now claim that they cancelled the 2005 election in an alleged effort to comply with Chapter 49 of the Water Code that had been enacted ten years earlier, and that had never been read to govern Board elections.  *See* Ex. N.  Mr. Rice was then told he could run in the 2006 election. *See id.*

After waiting patiently for almost one year, in January 2006, Mr. Rice again applied to run for a position on the Board in the then-upcoming May 2006 election by submitting his application to the Board's secretary, Doug Baker.  Ex. A ¶ 5; Ex. C, pp. 5-6.  Mr. Baker told Mr. Rice that he had to submit his application to Drew Nixon, the Board's accountant and elections administrator.  Ex. A ¶ 5; Ex. C, pp. 5-6.

Although Mr. Nixon originally accepted Mr. Rice's application, Mr. Nixon returned it to Mr. Rice two days later.  Ex. A ¶ 6.  Incredibly, Mr. Nixon told Mr. Rice that he was not authorized to accept the application.  *See id.* and Ex. A thereto.  Mr. Nixon also told Mr. Rice that it was too early for Mr. Rice to apply to run for the Board, another excuse that Defendants have since conceded was false.  *See id.*  In addition to Mr. Rice, sever other candidates from District #1 signed up to run in the 2006 election.  Ex. E at 26:24-27:17.

Mr. Rice later and the other candidates learned by reading an article in the local newspaper that he could not run in the 2006 election because the Board had divided the Water District into single-member districts, and the only positions that Mr. Rice might be eligible to run for would not be up for election until 2008.  Ex. A ¶ 7.  Defendants had previously assigned the then-current members to single-member districts.  Ex. I.  Defendants later determined that only the three seats that Mr. Rice was <u>not</u> eligible to run for would be up for election in 2006.  Ex. A

¶ 7.  However, Defendants never voted on or decided in any open meeting limiting the positions up for election in 2006.  *See* Exs. H and I.

Defendants devised and implemented their precinct scheme to prevent opposition, not to provide any representation for the precinct residents by Board members who live in those precincts.  Defendants even went so far as to assign Board member Barbara Perritte to represent precinct 2 (Ex. E at 24:13-15; Ex. I) even though she lived in precinct 1, and Defendants knew that fact at the time of her assignment.  Ex. E at 24:16-18.  Defendants also knew that their assignments would prevent those that lived in precinct 1 from running or voting in the 2006 election.  *See* Ex. E at 26:15-23; 28:1-8, 94:16 – 95:3.  Despite Ms. Perritte's complaints that she was misled and the assignment of her to a precinct in which she did not reside was illegal, Defendants refused to rescind the precinct assignments.  Ex. D at 7:13 - 11:8; Ex. E at 25:16 - 26:14, 93:18-22; Ex. J.  Further, even though Jim Young was appointed to precinct 1, he does not live in precinct 1.  Ex. U at 4:7 – 5:13, 89:19-25.  In fact, Mr. Young sold his property nearly one year ago and has been "traveling" ever since then.  *Id.*

The Board then cancelled the 2006 election because after their scheme excluded all seven candidates from District #1, the Board claimed that the three remaining candidates (two of whom were current Board members) were running unopposed.  Ex. K, p. 2.  The one non-Defendant candidate who applied to run in the 2006 election was apparently not very interested in serving because he resigned after attending a total of two Board meetings.  Without holding any election, the Board then appointed Cheryl Nixon, Drew Nixon's wife, to fill the remainder of that candidate's term.  Ex. L.

The Board has not held a contested election since 2004.  Under the guise of complying with Chapter 49, Defendants have successfully prevented Mr. Rice and all of the many other

candidates from District #1 from running for a position on the Board, and voting for any Board members since 2004 and will permanently prevent them from running or voting in every other election in the future.

## ARGUMENT & AUTHORITIES

**I.**    **Defendants Violated the Law by Failing to Comply with the Special Law (House Bill 2148) and Chapter 53 of the Texas Water Code.**

Because Chapter 49 of the Texas Water Code did not apply to any Board elections, the evidence shows that Defendants violated the law and summary judgment is not appropriate.

The Special Law, which specifically sets out the terms of office, election, and organization of the board of supervisors of the Water District to replace the general laws that were then in effect, governs Board elections. Ex. F. The Special Law clearly states that "except as specifically provided in this Act, the provisions of <u>Chapter 53, Water Code</u>, as amended, apply to elections of supervisors in the Panola County Fresh Water Supply District No. 1." *Id.* (emphasis added). Laws that specifically establish election procedures for specific districts control over election statutes of general application. *See Schrock v. Hylton*, 133 S.W.2d 175, 180 (Tex. Civ. App.—Dallas 1939, no writ) (residence requirement of general election law did not apply to an election controlled by the special statute governing fresh water supply districts).

Further, in the event of any conflict between the Special Law and Chapter 49, the Special Law governs. Indeed, Chapter 49 itself makes clear that the prior, more specific Special Law controls if there is a conflict with § 49.002. *See* TEX. WATER CODE § 49.002(a) ("In the event of such conflict, the specific provisions in such other chapter or Act shall control."). The Secretary of State agreed that in the event of any conflict, that the Board lacked authority to change to single-member districts. Ex. G, p. 4. There are multiple irreconcilable conflicts between the

**PLAINTIFF'S RESPONSE IN OPPOSITION TO SUMMARY JUDGMENT ON
CLAIMS RELATED TO TEXAS ELECTION AND WATER CODES**
683341.0001 WEST  6096912 v2

**PAGE** 11

Special Law and Chapter 49.   Plaintiff refers to and incorporates the arguments set out in

Plaintiff's Brief on Application of Election Laws.  *See* Sections I.A. – I.C.

Because the plain language of the Special Law makes clear that it Chapter 53, not

Chapter 49, apply to Board elections, summary judgment is not appropriate.

## II.   Alternatively, Only Texas Water Code § 49.103(a) and (b) Discussing Four-Year Terms and the Uniform Election Date Could Apply to the Board's Elections.

Even if portions of Chapter 49 applied to Board elections, Chapter 49 states that only the

provisions related to four-year terms and the uniform election date trump prior enactments

affecting specific water districts.   *See* Tex. Water Code § 49.103(e) ("Section 49.002

notwithstanding, in all areas of conflict the provisions of Subsections (a) and (b) shall take

precedence over all prior statutory enactments.").   This provision does not authorize the drastic

election procedure overhaul by the Board.  At most, this provision would only allow the Board to

change the length of members' terms from two to four years and hold elections every other year.

The remaining provisions of the Special Law and Chapter 53, which do not permit assignment of

positions and division into single-member districts, would still apply.

Plaintiff refers to and incorporates the arguments set out in Plaintiff's Brief on

Application of Election Laws.  *See* Section II.  Accordingly, summary judgment on Plaintiff's

claims related to single-member districts is not appropriate.

## III.   Defendants Violated the Texas Water and Elections Codes by Extending the Terms of Board Members Past 2006.

Even if Chapter 49 did apply, the Board was not permitted to extend the terms of any

Board member elected in 2004.  In relevant part, Section 49.103(g) provides:

> A district may, if required under this section to change the terms of office of
> directors to four-year terms or to change the date on which the district holds a
> director election, extend the terms of office of directors serving the district <u>on the
> effective date of</u> H.B. No. 2236, Acts of the 75th Legislature, Regular Session,

1997, to continue the terms until the next appropriate election date in an even-numbered year.

TEX. WATER CODE § 49.103(g) (emphasis added).  The Legislature only granted the Board the authority to extend the terms of the members who were in office when the amendments were passed, *i.e.*, those Board members who were in office in 1997.  Defendants had no authority to extend the terms of any other Board member, by agreement or otherwise.  It is undisputed that the Defendant Board members whose terms were extended were <u>not</u> in office in 1997.  Ex. E at 21:15-21.  As a result, Defendants lacked any authority to extend their terms of office.

Defendants claim that they did not know about the 10-year old law until 2005 and they tried to implement it at that time.  However, Defendants still violated the law in an attempt to deprive Plaintiff of his rights to vote and run for office.  Defendants extended the terms of the three Board members who were elected to two-year terms in 2003 one additional year to 2006.  Ex. E at 21:15-21.  But Defendants also extended the terms of two Board members (Boone and Young) who were elected to two-year terms in 2004 two additional years to 2008.  Ex. E at 90:15-18.  Section 49.103(g) would only have permitted the Board to extend the terms of the three Board members elected in 2003 to the next election date in an even-numbered year, or 2006.  If Defendants were truly trying to bring the Board elections into compliance with the law, they would have had all five positions up for election in 2006.  Their refusal to do so was a violation of the law designed to prevent Mr. Rice from voting or running for election.

## IV.    Defendants Violated the Texas Water and Elections Codes by Assigning Themselves to Single-Member Districts.

Even if all of Chapter 49 applied, Defendants did not have the authority to assign themselves to specific single-member districts and their appointments exceeded their authority.  For this additional reason, summary judgment is not appropriate.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO SUMMARY JUDGMENT ON CLAIMS RELATED TO TEXAS ELECTION AND WATER CODES**
683341.0001 WEST  6096912 v2

**PAGE** 13

Defendants contend that § 49.103(c) allowed them to assign themselves to specific single-member districts and self-determine which members' seats were open for election. However, the plain language of that provision only allows permanent directors to assign "position numbers" to each directors' office. TEX. WATER CODE § 49.103(c). "Position numbers" for the directors' seats are different and distinct from geographically-defined single-member districts. *Compare* TEX. WATER CODE § 49.103(c) and (d). Indeed, the provision permitting division into single-member districts does <u>not</u> permit a board to appoint the existing members to the single-member districts.

The reasoning for prohibiting the assignment of Board members to newly-created single-member districts is clear and illustrated by the illegal actions of the Defendants. When Board members are not initially elected from single-member districts, it is unlikely—as here—that the Board members' residences will match up with each of the single-member districts. Even with good intentions, a Board would then be faced with assigning Board members to represent areas in which they do not live. This would defeat the entire purpose of having single-member districts.

Here, however, Defendants' appointments were motivated by politics and power. Defendants' assignments were not intended to and did not result in representation by Board members who actually reside in their appointed precincts. Ms. Perritte was assigned to precinct 2 when she lived in precinct 1. Ex. E at 24:13-18. Mr. Young was assigned to precinct 1 when he no longer lives there. Ex. U at 4:7 – 5:13, 89:19-25. The single-member districts are such in name only. Defendants' assignment of the single-member districts was only intended to improperly permit Defendants to control who was on the Board for four years.

PLAINTIFF'S RESPONSE IN OPPOSITION TO SUMMARY JUDGMENT ON
CLAIMS RELATED TO TEXAS ELECTION AND WATER CODES
683341.0001 WEST  6096912 v2

PAGE 14

Because Defendants did not have the authority to assign the then-current Board members to single-member districts, or alternatively, Defendants exceeded their authority by assigning Board members to single-member districts in which they did not live, summary judgment is not appropriate.

## V.   Defendants Violated the Texas Water and Elections Codes by Deciding Which of Their Own Positions Would be Up for Election in 2006.

Also, even if Chapter 49 applied, Defendants did not have the authority to determine which of their own positions would be up for election in 2006 and their decisions exceeded the Board's authority.

Although they cannot identify the source, Defendants contend that they had the authority to agree upon which of their own positions would be up for election in 2006.  Instead, if required to change the terms of directors to four years, § 49.103(g) only permitted the Board to then achieve staggered terms by drawing lots.  Specifically, section 49.103(g) provides:

> A district may, if required under this section to change the terms of office of directors to four-year terms or to change the date on which the district holds a director election, extend the terms of office of directors serving the district on the effective date of H.B. No. 2236, Acts of the 75th Legislature, Regular Session, 1997, to continue the terms until the next appropriate election date in an even-numbered year.  A district that is required under this section to change the terms of office of directors to staggered terms may require directors of the district to draw lots to achieve staggered terms.

TEX. WATER CODE § 49.103(g).

Defendants contend that this provision is permissive because it uses the word "may." However, when discussing a party's rights or authority, the term "may" can be mandatory.  *See Aaron Rents, Inc. v. Travis Central Appraisal Dist.*, 212 S.W.3d 665, 676 (Tex. App.—Austin 2006, no pet.) (holding that statute providing that a "party may recover" attorneys fees mandated an award of reasonable and necessary fees).  Further, there is absolutely no authority that permits a board have its existing members decide which of their own positions should be available in the

upcoming election.  The Board only has the authority delegated to it by the Legislature.  *See Sipriano v. Great Spring Waters of America, Inc.*, 1 S.W.3d 75, 79-80 (Tex. 1999).  The Board only had the authority to achieve staggered terms by drawing lots <u>after</u> the election

In fact, in prior years when the Board needed to comply with new election requirements and then stagger their terms, they drew lots after the elections as set out in the law.  This is the way the Board implemented changes to the voting system in 1973.  *See* Ex. O ("A motion was made ... that two members of the Board be elected for one year and three members be elected for two years; places to be drawn after the election January of 1973."); Ex. P ("A drawing was held for one and two year terms.").  The Board also held elections for all five positions when required to alter their system in 1976 to comply with the Federal Voting Act.  *See* Ex. Q ("all five positions should be open for re-election").  The Board had all five positions up for election then drew lots to stagger terms to comply with the Special Law in 1978.  *See* Ex. R ("The supervisors drew for terms ....").

Having all five positions up for election in 2006 and then drawing lots to achieve terms was the only way the Board could have possibly complied with Chapter 49.  Their refusal to do so constitutes a violation of the law that prevents summary judgment.

**VI.  Defendants Violated the Texas Water and Elections Codes by Engaging in a Scheme to Divide the Water District into Single-Member Districts in a Manner that was Not Equitable for the Voters in the Individual Districts and the District as a Whole.**

Even if Chapter 49 did apply, the Board was required to insure that any changes were "fair and equitable" for all the voters in the District.  The summary judgment evidence raises, at a minimum, a fact issue of whether the Board violated that requirement.  Specifically, Section 49.103(d) provides:

> A district may provide for the election of all directors, or a majority of directors, from single-member districts, which shall be <u>geographically described</u> within the

PLAINTIFF'S RESPONSE IN OPPOSITION TO SUMMARY JUDGMENT ON
CLAIMS RELATED TO TEXAS ELECTION AND WATER CODES
683341.0001 WEST 6096912 v2

PAGE 16

boundaries of the district in a manner that is <u>equitable for the electors within such districts and within the district generally.</u>

TEX. WATER CODE § 49.103(d) (emphasis added).

> A.    <u>The Summary Judgment Evidence Shows that Defendants Did Not Adequately Describe the Geographic Boundaries of the Single-Member Districts.</u>

To comply with the requirements of § 49.103(d), the Board must first describe the geographic boundaries of the single-member districts within the district.  Defendants concede that there is not a single document that sets out the geographic boundaries of the single-member districts. *See* Ex. E at 23:13 - 24:8.  In fact, Barbara Perritte, who was on the Board when they voted to divide into single-member districts, was unaware of the boundaries of the Board's precincts. *See* Ex. S.

Defendants apparently claim that they adopted the same single-member districts used in elections for Panola County Commissioners.  However, because Defendants failed to describe the geographic boundaries of the single-member districts, summary judgment is inappropriate. In any event, Defendants' attempt to adopt the County Commissioners' single-member districts was inequitable and violated § 49.103(d). *See infra* discussion in Section VI.C.

> B.    <u>The Summary Judgment Evidence Shows that Defendants' Division of the Water District into Single-Member Districts Was Inequitable Because it Prevented Only Residents of Precinct 1 from Voting for Four Years.</u>

Also to comply with § 49.103(d), the division into single-member districts must be done in a manner that is equitable for the electors within such districts and within the district generally. *See* TEX. WATER CODE § 49.103(d).  The Secretary of State also agreed that "the conversion from 'at-large' to single-member districts must be equitable, per the requirement in Section 49.103."  Ex. G, p. 5.  The Secretary of State questioned "whether the self-selection process was more or less equitable than a random assignment would have been." *Id.*

The manner in which Defendants divided the Water District into single-member districts was inequitable for the electors in precinct 1 because it was the only scheme that could have (and did) prevent the residents of precinct 1 from running or voting in the 2006 election.  In contrast, residents of <u>all</u> of the other precincts were able to run and vote in 2006.

Defendants' changes to the election scheme resulted in the following election schedule:

| | |
|---|---|
| 2004 | Election of 2 at-large candidates, in which all Panola County residents could run and vote |
| 2005 | Election cancelled by Defendants |
| 2006 | Uncontested "election" of 3 candidates from single-member districts, in which only residents of precincts 2, 3 and 4 were eligible to run and vote |
| 2007 | No election |
| 2008 | Election of 2 candidates from one single-member district and one at-large position, in which all Panola County residents can run and vote |

Defendants contend that residents of precinct 1 were not improperly harmed because they would have to wait their turn to vote like all other residents.  However, the division and scheme concocted by Defendants that could have resulted in preventing the residents of precinct 1 from voting from 2004 to 2008.  Defendants knew that their division would prevent only the residents of precinct 1 from running or voting in 2006.  *See* Ex. E at 26:15-23; 28:1-8.  The residents of all other precincts will have the opportunity to run and vote in the elections in 2004, 2006 and 2008.

Defendants' actions were not equitable because they were politically motivated to preclude those who live in precinct 1 (who happen to be the people who live around the lake owned by the Water District and are the most active participants in the governmental process because they are most directly affected by the actions taken by the District) from running for office or voting for two election cycles.  This targeted discrimination against the residents of precinct 1 raises fact issues that prevent summary judgment.

C.      <u>The Summary Judgment Evidence Shows that Defendants' Division of the Water
District into Single-Member Districts Was Inequitable Because the Adoption of
the County Commissioners' Precincts Was Not Equitable for the Residents of
Precinct 1 or the Water District as a Whole.</u>

Defendants' apparent adoption of the precincts used to elect Panola County Commissioners without any justification is inequitable because it gives disparately less representation to the residents who have the most interest in the operations of the Board.

The Water District's boundaries are co-existent with Panola County. *See* Ex. T. However, that is where the similarities between the Water District and the County Commissioners end. The Water District does not collect taxes from the residents of Panola County. Ex. E at 5:20-25. The Water District owns Lake Murvaul and the land surrounding the lake. Ex. E at 4:14-25. Lake Murvaul is located entirely within County Commissioners' precinct 1, in the Southwest corner of Panola County. *Id.*; Ex. T. The Water District makes much of its money from lease and pier fees from residents who live on or around the lake. Ex. E at 5:11-17. The residents of County Commissioners' precinct 1 have the most at stake and most interest in the operations of the Board. Ex. E at 6:18 – 7:3.

Those who live outside of precinct 1 have very little interest in the operations of the Board. Ex. D at 6:19 – 7:4. For example, Panola County residents who do not live in precinct 1 or in Carthage do not pay any money to the Water District. *See* Ex. E at 17:12-21. Residents of the other precincts generally do not attend meetings or take any interest in the operations of the Board. Ex. E at 11:10-23. In fact, seven of the ten applications for the 2006 election were from residents of precinct 1. Ex. E at 26:24-27:17. However, Defendants cancelled the 2006 election because the only three positions selected by Defendants to be available were "unopposed." Ex. K, p. 2.

The lack of interest by those outside of precinct 1 has proven true since the cancelled 2006 election. The non-Defendant who ran in the 2006 election resigned after attending a total of two Board meetings, allowing Defendants to appoint Cheryl Nixon, Drew Nixon's wife, to fill the remainder of his term without an election. *See* Ex. L. The Defendants' scheme mandates representation on the Board by those who have little at state and little interest in the Board's operations to the exclusion of those who have great interest in the Board's actions, including their homes. Although the Board would like to avoid scrutiny, their division of the Water District is inequitable for those who live in precinct 1. At a minimum, these fact issues prevent summary judgment.

## VII.   Plaintiff's Claims are Not Barred by Any Affirmative Defenses.

In its preliminary order on Defendants' motions for summary judgment, the Court requested that the parties address whether Plaintiff's claims "are barred under various available defenses, including the applicable statutes of limitations and failure to exhaust available remedies." Plaintiff is uncertain exactly how to address these defensive issues because Defendants have not raised them and would have the burden of conclusively proving these affirmative defenses to be entitled to summary judgment. Nonetheless, Plaintiff's claims are not barred by any affirmative defenses.[1]

A.   Plaintiff's Claims are Not Barred by the Statute of Limitations.

Plaintiff brought his claims within the applicable statute of limitations.

Failure to comply with statutory obligations related to elections are subject to a two-year statute of limitations. *See Executive Committee of El Paso County Republican Party v. Karr*, 521 S.W.2d 147, 148 (Tex. Civ. App.—El Paso 1975, no writ). Plaintiff is not complaining about the

---

[1] Plaintiff limits his response to the specific affirmative defenses identified in the Court's Order. However, if the Court believes that other affirmative defenses may apply, Plaintiff respectfully requests an opportunity to respond to any additional defensive issues.

Defendants' admitted violations of law from 1997 to 2005.   Instead, Mr. Rice is only complaining about Defendants' elections violations from 2005 to date.  Because Plaintiff brought this action in March 2006, his claims were clearly asserted within the statute of limitations.

Further, contrary to Defendants' claims, this is not an election contest that may be subject to any shortened limitations period.  An election contest is only proper when a party complains that the outcome of an election is not the true outcome due to fraud or illegal conduct in the administration of the election.  *See* TEX. ELEC. CODE ANN. § 221.003.  While allegations of wrongdoing and fraud in the process of the election are proper subjects of an election contest, an allegation that a political subdivision lacked statutory authority to hold an election is not.  *City of Sherman v. Hudman*, 996 S.W.2d 904, 912 (Tex. App.—Dallas 1999, jdm't vacated by agm't); *see also City of Kingsville v. International Association of Firefighters*, 568 S.W.2d 397 (Tex. Civ. App.—Corpus Christi 1978, no writ) (declaratory judgment suit seeking determination as to whether city had proper statutory authority to hold repeal election was not an "election contest" for which plaintiff was required to give statutorily required notice).  Claims concerning the authority for an election fall within the scope of a claim under the Declaratory Judgments Act. *City of Sherman*, 996 S.W.2d at 912 (holding that allegation that city lacked statutory authority to hold repeal election fell within scope of Declaratory Judgments Act).

Plaintiff is not complaining about fraud or illegal conduct in elections that were held.  In fact, Plaintiff's claims address elections that were not held.  Plaintiff complains that the Board was without authority to divide the Water District into single-member districts and decide which of their own positions would be up for election.  Nevertheless, if Plaintiff's claims could somehow be construed as an election contest, because Plaintiff filed this action <u>before</u> the 2006

scheduled election, it would be timely. As a result, Defendants cannot meet their burden of showing that Plaintiff's claims are time-barred.

      B.      <u>Plaintiff's Claims are Not Barred by a Failure to Exhaust Available Remedies.</u>

Plaintiff is uncertain what remedies might otherwise have been available. Generally, a plaintiff's claims are not barred simply because another remedy is available. *See Daca, Inc. v. Commonwealth Land Title Ins. Co.*, 822 S.W.2d 360, 363 (Tex. App.—Houston [1st Dist.] 1992, writ denied).

As discussed above, this is not an election contest. *See City of Sherman*, 996 S.W.2d at 912. Therefore, Plaintiff's claims are not barred by any administrative or other requirements related to an election contest.

A *quo warranto* action was not available to Plaintiff because he did not seek to remove any Defendant from office. A claim seeking to remove a public official from office may be brought only through a *quo warranto* proceeding. *Reed v. Prince*, 194 S.W.3d 101, 105 (Tex. App.—Texarkana 2006, pet. denied); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 66.001(1). Plaintiff seeks a declaration that the Defendants exceeded their authority under the Water and Elections Code and that the 2006 election was void. This is the proper subject of a Declaratory Judgment action. *See Sherman*, 996 S.W.2d at 919. Further a *quo warranto* action may only be brought by the Attorney General or district or county attorney. *Reed*, 194 S.W.3d at 105. Therefore, Plaintiff would not have standing to assert a *quo warranto* action.

As a practical matter, Plaintiff has sought relief from all potential sources before filing this action. Ex. E at 9:20-25. The Texas Attorney General, the Texas Rangers, and the Panola County's District Attorney have investigated or are investigating the Defendants' election violations. Ex. E at 46:3 – 50:14. Further, the Texas Secretary of State, the chief elections officer of the State of Texas, was consulted concerning the Defendants' actions. *See* Ex. B ¶ 11-

12; Ex. G.  The Secretary of State concluded that "correction of this problem must be left to" legislation, court order, or both.  Ex. G, p. 7-8.  That is precisely what Mr. Rice asks this Court to do.

## CONCLUSION

WHEREFORE, Tommy Rice respectfully requests that the Court deny summary judgment on his claims for declaratory judgment under and violation of the Texas Water and Election Codes, and for any other relief to which he may be entitled, at law or in equity.

Respectfully submitted,

<u>    /s/ Christopher H. Taylor               </u>
MICHAEL SIMONS, Lead Attorney
State Bar No. 24008042
CHRISTOPHER H. TAYLOR
State Bar No. 24013606
AKIN GUMP STRAUSS HAUER & FELD LLP
300 West Sixth Street, Suite 2100
Austin, Texas 78701
(512) 499-6200
(512) 499-6213 FAX
Email:  dwhittlesey@akingump.com
Email:  msimons@akingump.com
Email:  ctaylor@akingump.com

ATTORNEYS FOR PLAINTIFF

PLAINTIFF'S RESPONSE IN OPPOSITION TO SUMMARY JUDGMENT ON
CLAIMS RELATED TO TEXAS ELECTION AND WATER CODES
683341.0001 WEST  6096912 v2

PAGE 23

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of June, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Matthew C. Waddell
Wright & Greenhill, P.C.
221 W. 6th Street, Suite 1800
Austin, Texas 78701


_____ /s/ Christopher H. Taylor _____

PLAINTIFF'S RESPONSE IN OPPOSITION TO SUMMARY JUDGMENT ON
CLAIMS RELATED TO TEXAS ELECTION AND WATER CODES
683341.0001 WEST  6096912 v2

PAGE 24