**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| TOMMY RICE AND | § | |
| J.R. "DICKIE" JACKS, JR., | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| V. | § | CAUSE NO. 6:06-CV-341 |
| | § | |
| ROGER WILLIAMS, BOARD OF | § | |
| SUPERVISORS OF PANOLA COUNTY | § | |
| FRESHWATER SUPPLY DISTRICT | § | |
| NO. 1, TIMOTHY BOONE, JAMES | § | |
| YOUNG, DOUGLAS BAKER, SHIRLEY | § | |
| REED, DREW NIXON, AND LARRY | § | |
| FIELDS, | § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION AND ORDER ON**
**DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

Came on for consideration this day the following motions for summary judgment:

1)      Defendant Larry Fields' Motion for Summary Judgment (Docket Entry No. 32);

2)      Defendants Timothy Boone, James Young, Douglas Baker, Shirley Reed, Larry Fields and Drew Nixon's Motion for Summary Judgment and Defendants' Motion for Summary Judgment on Injunctive and Declaratory Claims (Docket Entry No. 45);

3)      Defendant Board of Supervisors of Panola County Freshwater Supply District Number One's Motion for Summary Judgment (Docket Entry No. 48).

Also before the Court is the Plaintiff's Response in Opposition to Summary Judgment Claims Related to Texas Election and Water Codes (Docket Entry No. 75) and the Defendants' Brief in Support of their Motions for Summary Judgment on Plaintiff's Claims Related to Texas Election and Water Codes and Request for Costs and Attorneys' Fees (Docket Entry No. 76).

The Court, having considered the Defendants' motions, the responses, the replies, the applicable evidence, the relevant law, and the parties' arguments at the final pretrial conference, finds that summary judgment is appropriate as to all of the Plaintiff's claims for the reasons stated below.

## PROCEDURAL HISTORY

This case centers around the Panola County Freshwater Supply District No. 1 ("Water District") located in Panola County, Texas.  Plaintiff Tommy Rice alleges that the Board of Supervisors of the Water District ("Water District Board" or "Board")[1] and individual members and representatives of the Board violated Plaintiff's individual and property rights.

---

[1] Although the Plaintiffs filed suit against the Board, it did not name the Water District as a defendant.  To the extent that Plaintiff has brought suit against the individual members of the Board of Supervisors in their *official capacities*, these claims are construed as being brought against Panola County Freshwater Supply District No. 1 itself.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").
     Throughout this opinion, the Court will refer to Panola County Freshwater Supply District No. 1 as the "Water District" and to the *Board of Supervisors* of Panola County Freshwater Supply District No. 1 as the "Board" or "Water District Board."  References to claims against the Board of Supervisors, however, should be construed as references to claims against the Water District itself.  *See id.*

More particularly, Rice alleges that the Defendants (1) have engaged in a calculated scheme to prevent Plaintiff Rice from voting or running for office in 2005 and 2006, and (2) have taken action to diminish Plaintiff's property value, all in violation of the United States Constitution, federal, and state law.

On March 2, 2006, Plaintiff Tommy Rice, Jr. and former Plaintiff J. R. Jacks, Jr., filed their original petition and application for temporary restraining order and temporary and permanent injunction in the District Court of Travis County, Texas. Plaintiffs sued the Water District Board, individual Water District board members Timothy Boone, James Young, Douglas Baker, and Shirley Reed;[2] Drew Nixon, the Water District's former accountant; and Larry Fields, the Board's legal counsel. Plaintiff also filed suit against Roger Williams, the Texas Secretary of State.

Plaintiff's application for temporary injunction was denied by the state district court on March 24, 2006 and Plaintiffs Rice and Jacks non-suited the Texas Secretary of State on April 4, 2006. The remaining Defendants removed the case to the United States District Court for the Western District of Texas, Austin Division, on April 6, 2006. Plaintiff Jacks dismissed his claims against the remaining Defendants on June 6, 2006, leaving Rice as the sole plaintiff. Defendants filed a motion to transfer venue from the Western District to the Eastern District of Texas on June 2, 2006. The Western District Court granted Defendants' motion and transferred the case to this district on July 25, 2006.

---

[2] Defendants' counsel has filed a suggestion of death as to Defendant Shirley Reed (Docket Entry No. 51).

Defendant Fields filed his motion for summary judgment on October 10, 2006.  The Defendants filed their collective motion for summary judgment on March 13, 2007.  The Water District Board filed its motion for summary judgment on April 6, 2007.  Plaintiff Rice has responded to each motion.

The Court entered a preliminary order on the Defendants' Motions for Summary Judgment on June 8, 2007, and preliminarily granted the Defendants' motions as to all claims except the Plaintiff's Texas Election and Water Code claims (Docket Entry No. 74).  The Court also indicated that it believed summary judgment might be appropriate as to the remaining Texas Election and Water Code claims, and ordered the Plaintiff to produce summary judgment evidence to support those claims.  *See St. Paul Mercury Ins. Co v. Williamson*, 224 F.3d 425, 435 (5th Cir. 2000) ("district court may enter summary judgment *sua sponte* if the parties are provided with reasonable notice and an opportunity to present argument opposing the judgment").  The Plaintiff has responded in opposition to summary judgment on his Texas Water and Election Code claims (Docket Entry No. 75).

## BACKGROUND

### 1.    Allegations of Improper Realignment of Board Positions and Extension of Terms

The Water District, whose jurisdictional boundary coincides with that of Panola County, owns and operates Lake Murval along with approximately 4,000 acres of land surrounding the lake.  The Water District leases much of this land to individuals for

residences and other uses under various lease terms and conditions.  Plaintiff Rice's home is located on property he leases from the Water District.

From the mid-1970s through 2005, the Water District Board consisted of five at-large members who served two-year terms.  Three of the Board members were elected in odd-numbered years and two members were elected in even-numbered years.  A change to the Texas Water Code in 1995, however, required that directors of water district boards be elected to serve four-year terms and that board elections should be held in even-numbered years.

It is undisputed that the Water District Board did not officially take note of the 1995 legislation and change in water district board election law until 2005.  Up until that time, the Water District continued to elect members as it had done under the prior law.[3]

In February 2005, Plaintiff Rice applied to run in the scheduled May 2005 election to the Water District Board.  Initially, the Water District claimed that Plaintiff was not eligible to run for election because he did not own land in Panola County.  After the Water District and Board were informed of a 1999 change in the law, however, the Water District conceded that any registered voter was eligible to run for election to the Water District Board and accepted Rice's application.  Sometime after certifying Rice's eligibility to run, the Board took notice of the 1995 change in the Water Code requiring elections in even-numbered years and the Board cancelled the scheduled 2005 elections.  Plaintiff Rice disputes, however,

---

[3] Plaintiff does not challenge any of the Defendants' conduct prior to 2005.  (*See* Pl.'s Opp. to Summ. Jmt., Docket Entry No. 75, at 20–21.)

whether the 1995 change in the Texas Water Code actually applies to the Panola County Freshwater Supply District No. 1.

The Water District Board also voted in 2005 to create single-member districts (or "precincts") based upon the single-member precincts of the Panola County Commissioners Court. In the Board's view, single-member districts were authorized under Texas Water Code § 49.103. The new election scheme, approved by a vote of the Board members, provided that one board member would be elected from each of four geographically-defined precincts, while the fifth board member would be elected at-large. The Water District Board apparently adopted the same geographic precinct boundaries as those used by the Panola County Commissioners Court. The land surrounding Lake Murval, including the Plaintiff's residence, are located within Precinct 1. To be eligible to run for a Board position, the Board determined that a candidate must live within the single-member precinct that they are seeking to represent. The Board then self-assigned the current members to the five positions. At least one Board member was assigned to a precinct in which she did not live. The Board finally determined that elections to Precincts 2, 3, and 4—whose members were elected in 2003—would occur in 2006, and that elections for Precinct 1 and the at-large position—whose members were elected in 2004—would not be held until 2008. This election procedure was submitted to the United States Department of Justice for pre-approval and was, in fact, approved.

Under this plan, those residents who leased land from the Water District—i.e., those living near Lake Murval in Precinct 1—would not be able to vote or run for the Board until 2008. Plaintiff alleges that these changes represent a "calculated plan" by the Defendants to improperly preclude those candidates that are the most interested and who have the most at stake from running for election to the Water District Board until 2008. Plaintiff alleges that the Defendants have designed their "scheme" to restrain the participation of Precinct 1 candidates and to prevent a fair and equitable election. Plaintiff claims that the Defendants have violated Texas Election and Water Codes by self-assigning members to certain precincts, and by unilaterally determining that precincts 2, 3, and 4 would be up for election in 2006 while Precinct 1 and the at-large position will not be available for election until 2008.

### 2.    Allegations that the Defendants Improperly Rejected Plaintiff's Application for Ballot Placement in 2006

On or about January 10, 2006, Plaintiff Rice submitted an application to the Water District Board's secretary, Defendant Douglas Baker, for placement on the ballot for the May 2006 Board election. Defendant Baker referred Plaintiff to Defendant Drew Nixon, the Water District's accountant. Defendant Nixon accepted the application on that date, but later returned the application to Plaintiff with a letter dated January 12, 2006 claiming that it was too early to apply for candidacy in the election and that Mr. Nixon had not yet been authorized by the Board to serve as the elections administrator. Nevertheless, Plaintiff's application was later accepted on February 15, 2006, though it is not clear from the evidence

who finally accepted Plaintiff's application.  Because Plaintiff is a resident of Precinct 1, however, he was not eligible to run for the Board in 2006.

Plaintiff alleges that the excuse given by the Defendants for initially refusing Plaintiff's application is inconsistent with Texas law, under which it is never too early to submit an application to run for a position on a water district board.  Plaintiff alleges that the Defendants' failure to accept his application for the May 2006 ballot is a violation of Texas Election and Water Codes.

### 3.    Allegations of Breach of Contract and Deprivation of Property Rights

A number of Panola County residents lease land from the Water District.  Plaintiff Rice alleges that, prior to 2003, the Water District entered into 99-year or perpetual leases that were expressly and easily transferable.  Plaintiff further alleges that, prior to 2003, existing and new leaseholders had the right and option to enter into 99-year lease agreements with the Water District.  Plaintiff alleges that, after 2003, the Board of Supervisors has systematically refused to agree to lease transfers of the 99-year or "perpetual" leases when homes are sold, and has refused to allow lease holders to convert their existing leases into 99-year leases, contractual obligations notwithstanding.  Plaintiff alleges that, instead, the Board has insisted that homeowners and home purchasers agree to one-year leases that contain provisions much less favorable to the lessees.  Plaintiff alleges that this practice is also an unconstitutional deprivation of property rights because the practice makes selling

residents' homes and obtaining financing difficult, thereby threatening the property values for Panola County residents living on Lake Murval.

### 4.    Plaintiff's Causes of Action and Defendants' Motions for Summary Judgment

Plaintiff Rice seeks a declaration that the Defendants' actions violate the Texas Election and Water Codes.  Rice also seeks a declaration of his right to transfer and enter into a 99-year lease for his property on Lake Murval.  Plaintiff further seeks relief under 42 U.S.C. § 1983 for deprivation of constitutional rights and privileges under color of law, alleging that the Defendants' actions have deprived him of the right to vote and have deprived him of valuable property rights.  Finally, Plaintiff Rice brings a cause of action for breach of contract based on the Water District Board's denial of Plaintiff's right to transfer or convert his lease into a 99-year lease agreement with the Water District.

The Defendants seek summary judgment on Plaintiff's § 1983 claims, his contract claims, and his declaratory judgment claims on multiple grounds, including insufficient evidence and lack of standing, as well as individual defenses of legislative, qualified, and First Amendment immunity.  As stated previously, the Court is also of the opinion that summary judgment is appropriate as to Plaintiff's Texas Election and Water Code claims.

### SUMMARY JUDGMENT STANDARD

A motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

a judgment as a matter of law." FED. R. CIV. P. 56(c).  *See Celotex Corp. v. Catrett*, 477 U.S.

317, 323–25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.

1998).  The moving party must show initially that there is no genuine issue concerning any

material fact in the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 256 (1986).

A fact is "material" if it might affect the outcome of the suit under the governing law.

*Anderson*, 477 U.S. at 248; *Merritt-Campbell, Inc. v. RxP Products, Inc.*, 164 F.3d 957, 961

(5th Cir. 1999).  Issues of material fact are "genuine" only if they require resolution by a trier

of fact and if the evidence is such that a reasonable jury could return a verdict in favor of the

non-moving party.  *Anderson*, 477 U.S. at 248; *Merritt-Campbell, Inc.*, 164 F.3d at 961.  The

moving party may also meet its summary judgment burden by pointing to the absence of

evidence supporting any non-movant's claim.  *Celotex Corp.*, 477 U.S. at 325.

Once the moving party has satisfied its burden, the party opposing a properly

supported motion for summary judgment may not rest upon mere allegations or denials in its

pleading, but must "set forth specific facts showing that there is a genuine issue for trial."

*Anderson*, 477 U.S. at 256.  The non-movant is required to identify evidence in the record

and articulate the manner in which that evidence supports the non-movant's claim.  *Ragas*,

136 F.3d at 458.  If the non-movant fails to set forth specific facts to support an essential

element in that party's claim and on which that party will bear the burden of proof at trial,

then summary judgment is appropriate.  *Celotex Corp.*, 477 U.S. at 322–23.

When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Merrit-Campbel, Inc.*, 164 F.3d at 961.  "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.  Irrelevant or unnecessary factual disputes should not be considered.  *Id*.

## DISCUSSION

I.  **RICE'S CLAIMS AGAINST THE WATER DISTRICT FOR VIOLATION OF TEXAS ELECTION AND WATER CODES AND CLAIM UNDER § 1983 FOR DEPRIVATION OF THE RIGHT TO VOTE**

Plaintiff seeks a declaratory judgment that the actions of the Water District Board violate the Texas Election or Water Codes, and brings a related claim under 42 U.S.C. § 1983 for deprivation of the right to vote arising out of the same set of events.  Specifically, Plaintiff argues that the Board of Supervisors has violated Texas Election and Water Codes, as well as Plaintiff's constitutional rights, by (1) refusing to accept Plaintiff's application for placement on the ballot for the May 2006 election of the Water District Board; (2) self-assigning members to precincts within the Water District; and (3) unilaterally determining that only the positions for supervisors representing Precincts 2, 3, and 4 would be up for election in May 2006, and not those for Precinct 1 and the at-large position.  (Pl.'s 2nd Amended Compl., ¶ 34.)

The Defendants argue that the Board's decisions to self-assign its members to single-member districts and to make other changes in Board election procedure are not violations of Texas law, and further argue that Plaintiff was not injured when his application for placement on the May 2006 ballot was initially rejected.  The facts relevant to the Texas Water and Election Code claims are not in dispute.  Because Plaintiff's Water and Election Code claims arise out of the same set of facts as Plaintiff's claims under 42 U.S.C. § 1983 for deprivation of Plaintiff's right to vote, the Court will consider these claims together.

### A.     The Board's Change in Election Procedure

A central question is whether the Water District Board's 2005 and 2006 changes to Board election procedure are permitted under Texas law.  To answer this question, the Court must interpret Texas statutes.  In so doing, this court must apply the same statutory analysis a Texas court would apply.  *McNeil v. Time Ins. Co.*, 205 F.3d 179, 183 (5th Cir. 2000).  Under Texas law, the primary rule of statutory construction is that the court must look to the intent of the legislature and must construe the statute so as to give effect to that intent.  *Union Bankers Ins. Co. v. Shelton*, 889 S.W.2d 278, 280 (Tex. 1994).  "The duty of the court is to construe a statute as written and ascertain the legislature's intent from the language of the act."  *McNeil*, 205 F.3d at 183 (citing *Morrison v. Chan*, 699 S.W.2d 278, 280 (Tex. 1994)).  In addition to considering the language of the statute, a court may also consider the legislative history, the nature and object to be obtained, and the consequences that would

follow from alternate constructions to determine the legislative intent.  *In re Bay Area Citizens Against Lawsuit Abuse*, 982 S.W.2d 371, 380 (Tex. 1998).

### 1.    Applicability of Texas Water Code Chapter 49

The Water District states that its actions in 2005 and 2006 with regard to water district elections are either required or permitted under Chapter 49 of the Texas Water Code.  The Plaintiff contests this, argues that Chapter 49 does not apply to the Panola County Freshwater Supply District No. 1, and concludes that the Board was without legal authority to alter election procedure, cancel elections, and create single-member districts as it did.

To properly settle this matter, a brief history of Panola County's Water District is appropriate.  The Water District was created by election of the citizens of Panola County in 1953[4] as provided for under Article 16, § 59 of the Texas Constitution and derivative statues.[5]  *See* TEX. CONST. art. XVI, § 59; *see also* TEX. WATER CODE ANN. § 53.088 (Vernon 2002).  In 1977, the Texas Legislature passed House Bill 2148, which specifically provided for two-year staggered terms for members of the Panola County Water District Board of Supervisors in annual elections to be held on the first Saturday in April.  (House Bill 2148, Pl.'s Response, Doc. No. 53, Ex. J); *see* TEXAS WATER AUX. LAWS, Table II (Vernon 2005) [Act of May 25, 1977, 65th Leg., R.S., ch. 263].  House Bill 2148 provided

---

[4] Defendants assert this historical fact in their Trial Brief Regarding Texas Water Code § 49.103, Docket Entry No. 67, ¶ 8.  Plaintiff has not disputed this fact.

[5] The current sections providing for an election to confirm the creation of a fresh water supply district is Texas Water Code §§ 53.011–53.029, 49.102.  TEX. WATER CODE ANN. §§ 53.011–53.029 (Vernon 2002 & Supp. 2006); *id.*, § 49.102 (Vernon Supp. 2006).

that, "[e]xcept as specifically provided in this Act, the provisions of Chapter 53, Water Code, as amended, apply to the election of supervisors in the Panola County Fresh Water Supply District No. 1."  (Pl.'s Resp., Doc. No. 53, Ex. J.)  Chapter 53 of the Texas Water Code concerns fresh water supply districts.  *See* 2 TEX. WATER CODE ANN. 167 (Vernon 2002). Chapter 53 is contained within Title 4 of the Water Code, which is entitled "General Law Districts."  *See* 1A TEX. WATER CODE ANN. 525  (Vernon 2000).

In 1995, the Texas Legislature consolidated several procedural and administrative sections of the Texas Water Code into a new chapter, known as Chapter 49.  *See* Senate Bill 626, Act of  May 25, 1995, 74th Leg., R.S., ch. 715, 1995 Tex. Gen. Laws 715; TEX. WATER CODE ANN. §§ 49.001–456 (Vernon 2000 & Supp. 2006).  Chapter 49, which is also found within Title 4, is entitled "Provisions Applicable to All Districts."  According to bill analyses prepared by State Senator Armbrister and by the House Research Organization, the purpose of the new Chapter 49 was to create uniform rules and procedures among the various types of local water districts.  (Def.'s Trial Brief, Doc. No. 67, Ex. C, D.)  In addition to creating Chapter 49, the 1995 Act also altered or deleted portions of other chapters in the Water Code, including Chapter 53.  *See* Senate Bill 626, Act of May 25, 1995, 74th Leg., R.S., ch. 715, §§ 30–49, 1995 Tex. Gen. Laws 715.  In 1997, the Texas Legislature amended Chapter 49 to correct or clarify the law and make additional changes.  *See* Senate Bill 1865, Act of May 30, 1997, 75th Leg., R.S., ch. 1070, § 4, 1997 Tex. Gen. Laws 1070.  Chapter 49 has been amended periodically since then.

Plaintiff argues that Chapter 49 of the Water Code does not apply to the Panola County Water District and that the election procedures set out in the Legislature's 1977 act, House Bill 2148, govern the election of directors to the Panola County Water District Board of Supervisors.  Plaintiff points to the fact that House Bill 2148 is a "special law" affecting only the Panola County Water District, which, Plaintiff argues, makes the Water District a "special law district" that is exempt from Chapter 49.  Plaintiff also argues that language House Bill 2148 provides that only Chapter 53 governs the Panola County Water District, and mentions no other chapter.

The Court disagrees with the Plaintiff's interpretation of these statutes.  According to § 49.002, which describes the applicability of the new chapter, Chapter 49 applies "to all general and special law districts to the extent that the provisions of this chapter do not directly conflict with a provision in any other chapter of this code or any Act *creating* or *affecting* a special law district."  TEX. WATER CODE. ANN. § 49.002 (a) (Vernon 2000) (emphasis added).  The Panola County Freshwater Supply District No. 1, however, is not a "special law district" and House Bill 2148 is not an act "creating or affecting a special law district."  Special law districts are districts that are actually *created* by an act of the legislature.  *Save Our Springs Alliance, Inc. v. Lazy Nine Mun. Utility Dist. ex rel. Board of Directors*, 198 S.W.3d 300, 313 (Tex. App.—Texarkana 2006, pet. denied).  It is undisputed, however, that the Panola County Freshwater Supply District No. 1 was created by general election of Panola County voters under the provisions of the Texas Constitution and the

Water Code and *not* by a specific act of the Legislature.  In addition, to the extent that House

Bill 2148 states that the Panola County Freshwater Supply District is governed by "the

provisions of Chapter 53, Water Code, as amended," the act that created Chapter 49

effectively amended and superseded sections of Chapter 53.  *See* Senate Bill 626, Act of May

25, 1995, 74th Leg., R.S., ch. 715, §§ 30–49, 1995 Tex. Gen. Laws 715.  Finally, it was the

Legislature's intent in 1995 to amend all laws governing general law districts in order to

simplify election procedures for such districts.  Because Panola County Freshwater Supply

District No. 1 is a "general law district," and because House Bill 2148 is not an act "creating

or affecting a special law district," Chapter 49 applies to the Panola County Water District.[6]

---

[6] The conclusion that the Water District is a general law district subject to all provisions
of Chapter 49 is further necessitated (a) by the organization of the Texas Water Code as it existed
in 1995 and (b) the reorganization of the Water Code since.  When Senate Bill 626 was passed in
1995 creating Chapter 49, Texas Water Code chapters 49 through 67 were organized under Title
4, General Law Districts.  In contrast, Title 5 was entitled "Special Law Districts."  *See* TEX.
WATER CODE ANN. Ch. 151, 152 (Vernon 2004 & Supp. 2006) (Chapter 151 repealed by Act of
May 20, 2003, 78th Leg., R.S., ch. 1277, 2003 Tex. Gen. Laws 1277).  The body of Title 5
contained provisions for several so-called "Special Law Districts."  Though perhaps not all
special law districts were actually contained in Title 5, the Court notes that no mention of the
Panola County Freshwater Supply District No. 1 is found in Title 5.

In 2003, the Texas Legislature created a new code known as the "Special District Local
Laws Code."  *See* TEX. SPEC. DIST. CODE ANN. §§ 8801.001–8801.006 (Vernon 2006); Act of
May 20, 2003, 78th Leg., R.S., ch. 1277, §§ 1, 6, 2003 Tex. Gen. Laws 1277.  As part of the
2003 legislation, the Legislature codified or recodified acts pertaining to certain utility districts,
including those "Special Law Districts" found in Texas Water Code Title 5.  *See* Act of May 20,
2003, 78th Leg., R.S., ch. 1277, §§ 1, 6, 2003 Tex. Gen. Laws 1277.  The new Texas Special
District Local Laws Code contains a section entitled "Fresh Water Supply Districts."  The only
fresh water supply district found under this Subtitle is the "Bayview Municipal Utility District of
Galveston County."  *See* TEX. SPEC. DIST. CODE ANN. §§ 6901.001–6901.004 (Vernon 2006).

Accordingly, the organization of the Texas Water Code as it existed in 1995 and 1997, as
well as the 2003 reorganization of "Special Districts" into the new Texas Special District Local
Laws Code, supports the Court's conclusion that the Panola County Freshwater Supply District
No. 1 is not a "special law district" as contemplated by Water Code § 49.002 and other Texas

## 2.      The Board's Changes to Water District Elections

The portion of Chapter 49 relevant to the Plaintiff's claims is § 49.103, which, as passed in 1995, provided that water district board members should serve staggered four-year terms with elections to be held in either January or May of even-numbered years.  TEX. WATER CODE. ANN. § 49.103(a)–(b) (Vernon Supp. 2006).  In 2005, the Legislature amended § 49.103 to provide that elections should be held only in May.  *See id*. § 49.103(b).

Because the Panola County Freshwater Supply District No. 1 is a general law district, and given the Texas Legislature's purpose in enacting Chapter 49, all prior enactments pertaining to the Water District, including House Bill 2148, are superseded by Chapter 49. The Water District is therefore required by law to elect Board members to four-year terms and must hold elections in May of even-numbered years.  *See* TEX. WATER CODE ANN. § 49.103(a)–(b) (Vernon Supp. 2006).

It is undisputed that the Panola County Freshwater Supply District No. 1 did not adjust its election procedures to comply with the 1995 changes in the law until 2005, when the Water District Board claims that it first became aware of the changes.  For the years from 1995 through 2005, elections for the Water District Board were conducted in a manner that was contrary to existing law.  Because the Water District was not authorized to hold elections in 2005, however, the Board's decision to cancel the 2005 election was appropriate.

---

law.

In addition, the Water District Board was authorized by law to create single-member, geographically-assigned districts under § 49.103 (c) and (d).  *See* TEX. WATER CODE ANN. § 49.103(c)–(d) (Vernon Supp. 2006).  Section 49.103(c) and (d) provides:

> (c)  The permanent directors may assign a position number to each director's office, in which case directors shall thereafter be elected by position and not at large.

> (d)  A district may provide for the election of all directors, or a majority of directors, from single-member districts, which shall be geographically described within the boundaries of the district in a manner that is equitable for the electors within such districts and within the district generally.

TEX. WATER CODE ANN. § 49.103(c)–(d) (Vernon Supp. 2006).

The Plaintiff argues that § 49.103(e), which states  "Section 49.002 notwithstanding, in all areas of conflict the provisions of Subsections (a) and (b) shall take precedence over all prior statutory enactments," does not also state that Subsections (c) and (d) also take precedence over prior enactments.  Plaintiff concludes, therefore, that § 49.103(c) and (d) do not authorize single-member districts for the Panola County Water District.  Again, Plaintiff misreads the statute.  The purpose of § 49.103(e), however, is to specify that subsections (a) and (b) supersede even those laws governing *special law districts*, the exemptions in § 49.002 "notwithstanding."  Section 49.103(e) is not relevant to general law districts, and does not prohibit the application of § 49.103(c) and (d) to general law districts.  In any event,

House Bill 2148 does not specifically address the division of the Water District into single-member districts, and is not in direct conflict with subsections (c) and (d).

Because subsections (c) and (d) permit the Board "to assign a position number to each director's office" and to create single-member districts for each position, the Board's decision to self-assign Board members to geographically described districts was permitted and appropriate. Furthermore, it was appropriate for the Board to assign *existing* board members to a geographic position in which they did not live, provided that "directors would *thereafter* be elected by position." *Id*. § 49.103(c) (emphasis added).

### 3. Whether the Board's Division into Single-Member Districts was Equitable

The Plaintiff argues, however, that even if the Board was permitted to create and assign single-member districts, § 49.103(d) requires that the districts be created in a manner that is "equitable" for the voters in the individual districts and the district as a whole.  The Plaintiff argues that the Water District Board's actual method of implementing the changes—i.e., self-assigning members to precincts, extending the terms of certain of the Board members, and determining which of their own positions would be up for election in 2006—was done so as to limit Plaintiff's and other residents' participation in Board elections to once every four years, while members of all other precincts are able to run or vote in elections every two years.  Plaintiff argues that this method is not fair and equitable under Texas law and, and Plaintiff also argues that it violates his right to vote under the United States Constitution.

To begin, Plaintiff fails to elaborate on what does or does not constitute an "equitable" division.  Indeed, Plaintiff cites no law to guide the court on what would constitute an "equitable" assignment of precincts.  Plaintiff merely argues that it is inequitable that Precinct 1 residents will not be able to vote for a position of the Board except every four years.  Plaintiff's argument notwithstanding, the Board's chosen election schedule permits residents of *all* precincts to vote for one candidate to represent their geographic precinct and one candidate to represent the at-large position.  Because of the staggered nature of the elections, at least one precinct's elections would necessarily have fallen in the same year as the election for the at-large position.  This set of facts alone does not raise a genuine issue as to whether the election procedure is equitable.

Neither does the postponement of an election due to the staggering of elections implicate or violate the Plaintiff's right to vote under the United States Constitution.  *See Pate v. El Paso County, Texas*, 337 F. Supp. 95 (W.D. Tex. 1970), *aff'd*, 400 U.S. 806 (1970) (holding that postponement of franchise due to staggering of elections did not amount to a constitutional violation); *Carr v. Brazoria County, Texas*, 341 F. Supp. 155 (S.D. Tex. 1972), *aff'd*, 468 F.2d 950 (5th Cir. 1972) (same).  Accordingly, the mere fact that some residents of the Water District must wait until 2008 to vote again in a Water District election does not on its own establish a Constitutional violation.

Second, when dividing the Water District into geographic precincts, the Board chose to adopt the geographic boundaries of the Panola County Commissioners Court.  There is no

evidence that the Commissioners' Court's boundaries are inequitable for residents of Panola County, all of whom are also eligible voters in Water District elections.  Nor is there any evidence that the Board engaged in any prohibited analysis or tried to purposefully suppress the right to vote of any protected class or political group in violation of the United States Constitution.  Though certainly not determinative, the Board properly submitted its chosen geographic assignment of districts to the Department of Justice for approval, and the assignment was approved.

Contrary to the Plaintiff's assertion, a consequence of the Board's chosen geographic districts is to substantially increase the likelihood that those leasing land from the Water District will be able to elect a representative to the Board who reflects their views.  That is, because the land surrounding Lake Murval is not divided into two or more separate districts, its residents are able to concentrate their voting strength and ensure someone is elected to the Board to represent their interests.  *See Thornburg v. Gingles*, 478 U.S. 30, 50 (1986) (holding that so-called "majority-minority" districts are not unconstitutional in and of themselves).  Also, because there remains a single at-large position on the Board, Lake Murval residents will have the opportunity to run or vote for two positions on the Board.[7]   Any other

---

[7]  As presented by the Plaintiff, the prior at-large configuration actually might have resulted in disproportionately large representation by those in a landlord-tenant relationship with the Water District.  The constitutional and statutory purpose of a fresh water supply district is "to conserve, transport, and distribute fresh water from any sources for domestic and commercial purposes."  TEX. WATER CODE ANN. § 53.101 (Vernon 2002).  The Water District's role as landlord is only secondary to this purpose.  Accordingly, all of those that live within the Water District's various precincts and benefit from the Water District's water resources at Lake Murval have a similar interest in the governance of the Water District, and there is no reason to allow the

configuration of *single-member* districts might even have the effect of *reducing* the voting power of Water District lessees.  Nevertheless, the Plaintiff has produced no evidence that the present geographic assignment of districts results in less opportunity for Water District lessees to participate in the political process than would any other conceivable single-member configuration.[8]  *See Davis v. Bandemer*, 478 U.S. 109, 131 (1986) (noting that a finding of unconstitutional vote dilution requires a "substantially greater showing of adverse affects than a mere lack of proportional representation").

Finally, the Plaintiff has produced no competent summary judgment evidence to establish how Lake Murval residents' constitutional voting rights have been compromised. There is no evidence comparing the number of voters who live on or lease land owned by the Water District with the number of voters in other precincts.  Neither is there any evidence that the Board's chosen precincts consist of unequal populations in a manner that violates the principle of one-man-one-vote.  *See Reynolds v. Sims*, 377 U.S. 533 (1964).  Plaintiff has not produced sufficient evidence to create a genuine issue as to whether the single-member

---

interests of those in a landlord-tenant relationship with the District to dominate a Board whose constitutional purpose is not the lease of real estate, but the management and distribution of freshwater resources.

[8] Defendants note that the Water District had recently elected its first African-American member, Defendant Shirley Reed.  In this case, Plaintiff has not shown how a return to at-large elections or an alternate configuration of Water District precincts will impact minority voters. When considering a change in voting practices, however, it is imperative that a court take into account how such a change might impact minority voters.  *See McDaniel v. Sanchez*, 452 U.S. 130, 149–50 (1981) (holding that courts should avoid modifying voting practices in a way that will impair minority access to the electoral process).

districts, as presently aligned, are "equitable" or not, or as to whether the present alignment violates the Plaintiff's constitutional rights.

### 4.     Staggering of Terms by Drawing Lots

Plaintiff also argues that the Board should not have achieved staggered terms by extending any of the Board members' terms of office, but rather should have staggered terms by drawing lots.  Section 49.103(g) states:

> A district may, if required under this section to change the terms of office of directors to four-year terms or to change the date on which the district holds a director election, extend the terms of office of directors serving the district on the effective date of H.B. No. 2236, Acts of the 75th Legislature, Regular Session, 1997, to continue the terms until the next appropriate election date in an even-numbered year.  A district that is required under this section to change the terms of office of directors to staggered terms may require directors of the district to draw lots to achieve staggered terms.

TEX. WATER CODE ANN. § 49.103(g) (Vernon Supp. 2006).

In this case, the Board assigned its members to individual precincts, as permitted under § 49.103(c), and chose to stagger the elections of those individuals representing Precincts 2, 3, and 4 with elections for those members assigned to Precinct 1 and the at-large position, as contemplated in subsection (g).  Though subsection (g) references the effective date of the Act—1997—when permitting water districts to extend the terms of their

members, it was clearly the intention of the legislature that Water Districts have authority to extend terms of office to accomplish the purpose of the Act.  Here, where the Board was unaware of the Act until almost eight years after its effective date, the Water District's remedial actions nevertheless conform to the procedure approved by the legislature for enacting the statute's provisions.

In addition, there is no absolute requirement that the Board draw lots to achieve staggered terms.  In this case, the Board members' terms were *already staggered*, and therefore a drawing of lots was not necessary.  The Board simply extended the terms of those individuals who had been elected in 2004—those representing Precinct 1 and the at-large position—into four-year terms, and extended the terms of those individuals elected in 2003—those representing Precincts 2, 3 and 4—until 2006.[9]

To the extent that the Board's decisions were an attempt to bring Water District Board election procedure into compliance with the law, the Board's actions were permitted by the Water Code.  In addition, the self-assignment of districts does not rise to the level of a constitutional deprivation of the right to vote.[10]

---

[9] Indeed, in response to an inquiry initiated by the Plaintiff, the Texas Secretary of State's office suggested that just such a method might be an appropriate way to achieve staggered terms for future elections.  (Pl.'s Resp., Doc. No. 53, Ex. K, at 9.)

[10] Plaintiff vaguely asserts that the Defendants' staggering of terms constitutes a constitutional violation, but Plaintiff fails to expand on this position or cite to relevant case law to support this claim.

### B.    January 2006 Rejection of Plaintiff's Application for Placement on Ballot

The Court next turns to the question of whether the Defendant's admitted refusal in January 2006 to accept Plaintiff's application for placement on the ballot for the May 2006 Water District Board election violates the Texas Water and Election Codes or the United States Constitution.

To begin, Plaintiff's chosen remedy for this harm is an injunction pursuant to Texas Election Code § 273.081, which states that "[a] person who is being harmed or is in danger of being harmed by a violation or threatened violation of this code is entitled to appropriate injunctive relief to prevent the violation from continuing or occurring."  TEX. ELEC. CODE. ANN. § 273.081 (Vernon 2003).  In this case, however, there is no evidence that Plaintiff "is being harmed or is in danger of being harmed" because his application to run for the Board was initially rejected in January 2006.  Indeed, any harm that existed at the time was remedied when the Board accepted Plaintiff's application in March 2006.

As to § 1983, it is not clear how a violation of state election law that resulted in no harm to the Plaintiff implicates any right protected by the United States Constitution.  *See Woodard v. Andrus*, 419 F.3d 348, 353 (5th Cir. 2005) ("[A] violation of state statute alone is not cognizable under § 1983 because § 1983 is only a remedy for violations of federal statutory and constitutional rights."); *Welch v. McKenzie*, 765 F.2d 1311, 1317 (5th Cir. 1985) (finding that only those election disputes that implicate the integrity of the electoral process are actionable as constitutional violations).  Plaintiff fails to identify a constitutional

violation flowing from a harmless violation of state election law.  Rather, Plaintiff merely argues that the facts are egregious and that a jury should be permitted to conclude the same.  Nevertheless, the Plaintiff's evidence does not raise a genuine issue of material fact regarding a constitutionally protected right.

### C.  No Evidence to Support Violations of the Texas Water or Elections Codes or the United States Constitution

Accordingly, the Court finds that the Water District Board's self-assignment of members to geographically-defined precincts within the Water District does not violate the Texas Water Code.  Nor was the Board's decision that the only positions available for election in 2006 should be Precincts 2, 3, and 4 a violation of the Water Code.  The Court also finds that the Board's initial rejection of Plaintiff's application to run for office is not an actionable violation of the Texas Water or Election Codes.  Finally, the Court finds that there is insufficient evidence that any of the Water District Board's actions with respect to elections and voting procedure violate the Plaintiff's constitutional rights.  Accordingly, these claims should be dismissed.

### II.  RICE'S CLAIM AGAINST THE WATER DISTRICT FOR DECLARATORY JUDGMENT AS TO HIS RIGHTS UNDER HIS LEASE WITH THE WATER DISTRICT AND CLAIM FOR BREACH OF CONTRACT

Plaintiff also asserts claims for declaratory judgment arising out of his lease with the Water District.  Specifically, Plaintiff seeks a declaration from the Court that his lease with the Water District is transferable, and that Plaintiff has the right to enter into a 99-year lease with the Water District.  These issues are also the focus of Plaintiff's breach of contract

claim, in which Plaintiff argues that the Board has systematically refused to allow 99-year leases and has refused to allow the transfer of existing leases, thereby breaching promises to the contrary.[11]  The Defendants argue that there is no evidence that the Water District or the Board ever made any of the alleged promises to Plaintiff and there is no evidence that the Water District breached any promise.

Plaintiff argues that the Water District Board promised that Plaintiff had the right to enter into a 99-year lease with the Water District in an October 30, 1998 letter giving Water District lessees an option to enter into a one-year or a 99-year lease.  (Pl.'s Resp., Docket Entry No. 53, Ex. G.)  The Water District's letter, however, asks that those lease-holders wishing to enter into a 99-year lease notify the Board of their interest by November 6, 1998. There is no evidence that Plaintiff notified the Board of any desire to enter into a 99-year lease prior to November 6, 1998, and there is no evidence that he ever gave any consideration in exchange for the original promise or for any long-term option to enter a 99-year lease. Plaintiff offers no other evidence to support a finding that he has a valid and enforceable right to convert his existing lease into a 99-year lease.  Plaintiff fails to meet his burden to produce evidence creating a genuine issue of fact as to the existence of a valid agreement, and the Court finds that Plaintiff does not have a presently-enforceable right to enter into or convert his present lease into a 99-year lease with the Water District.

_____

[11] Plaintiff concedes that none of the individual defendants are parties to the Plaintiff's lease with the Water District.  Accordingly, to the extent that Plaintiff has asserted claims for breach of contract against the individual defendants, those claims are dismissed.

Plaintiff also argues that he has a contractual right under his lease to transfer his existing lease, and that the Water District Board has breached, repudiated, or anticipatorily breached its contractual duty to permit such a transfer.  Plaintiff's evidence of a promise to transfer consists of a June 26, 2003 letter from the Water District Board Chairman describing the transferability of certain leases known as "Private Limited Use Permits."  The letter states that "permits are transferable and [consent to transfer] will not be unreasonably refused provided the current lessee is in good standing with his lease fee, the property has been adequately maintained, property taxes on the property have been maintained, and the proper transfer fee is paid at the time of the transfer."  (Pl.'s Resp., Docket Entry No. 53, Ex. H.) The letter also states that "[w]e feel the permit holder who's [sic] permit is in good standing has good use of his property and has the ability to maintain that use into the future and transfer the lease to another person with very few potential exceptions."  (*Id*.)

Though the letter describes the Board's *policy* on the transferability of leases, there is no evidence that a promise of transferability is also included in the Plaintiff's lease itself. There is no summary judgment evidence that any party, much less the Plaintiff, gave consideration for the Board's promise to permit transfer of leases.  Neither is there any evidence that Plaintiff has relied on the Board's policy statement in any way.  There is no other evidence that would support a finding that the Board's 2003 letter represents an enforceable promise or representation.  Accordingly, the Court finds that there is no evidence

to support a finding that Plaintiff and the Water District made an enforceable agreement to permit free transfer of leases.

Furthermore, there is no evidence that the Board has breached any such agreement. The undisputed evidence shows that Plaintiff has not attempted to transfer his lease nor has be been denied permission to transfer his lease.  The Water District Board has stated that it would indeed permit Plaintiff to transfer his lease, should he make such a request. Accordingly, even if Plaintiff has a right to transfer his lease, he has produced no evidence of a breach.

Because Plaintiff has failed to establish a genuine issue of fact as to whether he has an enforceable right to convert his lease into 99-year lease or to transfer his lease, Plaintiff's claims for breach of contract should be dismissed.

### III.    RICE'S § 1983 CLAIM AGAINST THE WATER DISTRICT FOR DEPRIVATION OF PROPERTY RIGHTS

Plaintiff also asserts a claim against the Defendants for the deprivation of Plaintiff's property rights under color of law pursuant to 42 U.S.C. § 1983.  Defendants argue that the Plaintiff does not have standing to bring his claims for deprivation of property rights.

Under the Constitution of the United States, federal courts may only decide matters to the extent that they arise in the context of justiciable "cases" or "controversies."  U.S. CONST., Art. III, § 2; *SEC v. Medical Committee for Human Rights*, 404 U.S. 403, 407 (1972).  In this regard, a plaintiff must establish that he has *standing* to sue before the case-or-controversy requirement is met.  *See Raines v. Byrd*, 521 U.S. 811, 818 (1997); *Lujan v.*

*Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  The standing inquiry focuses on whether the plaintiff is the proper party to bring this suit.  *Raines*, 521 U.S. at 818 (citing *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 37 (1976)).

To establish standing under Article III of the United States Constitution, a plaintiff must demonstrate: (1) that he personally has suffered some actual or threatened injury as a result of the defendant's allegedly illegal conduct; (2) that the plaintiff's injury fairly can be traced to the challenged action, and (3) that the injury is likely to be redressed by a favorable decision.  *Doe v. Beaumont Indep. Sch. Dist.*, 173 F.3d 274, 281 (5th Cir. 1999) (quoting *Murray v. City of Austin*, 947 F.2d 147, 151 (5th Cir. 1991)).  At the summary judgment stage, the party invoking federal jurisdiction bears the burden of providing evidence to support the elements of standing by affidavit or other evidence of "specific facts," which for the purpose of summary judgment must be taken as true.  *Doe*, 240 F.3d at 474 (quoting *Lujan*, 504 U.S. at 561).

Defendants argue that the Plaintiff has not met the first element—he has not suffered an "injury in fact."  *See Lujan*, 504 U.S. at 560.  The "injury in fact" requirement is met when a plaintiff establishes "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."  *Id*. (internal quotations and citations omitted); *United States v. Hays*, 515 U.S. 737, 742–43 (1995).

The Court agrees that Plaintiff has not met his burden to establish an injury in fact. As articulated by Plaintiff, the Board's policies of refusing to permit lessees to enter into 99-

year leases and refusing to agree to the transfer of leases have each served to diminish the value of Plaintiff's property.  Plaintiff fails to support these claims of injury, however, with competent summary judgment evidence.  Plaintiff states in his deposition that he has not had his property appraised, and states an unfounded opinion that a change in the lease terms will devalue his property and make it difficult to obtain financing.  (Rice Depo. 25:7–26:14).  Plaintiff also submits a letter sent to Plaintiff's attorney by an appraiser who states that a 99-year lease is more valuable than a one-year lease.  (Pl.'s Resp., Doc. No. 53, Ex. I.)  The letter, however, is not competent summary judgment evidence because it is not in the form of an affidavit or sworn statement as required by FED. R. CIV. P. 56.  *See Martin v. John W. Stone Oil Distributor, Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (noting that hearsay evidence and unsworn documents do not qualify as competent opposing evidence).  Nevertheless, even if the appraiser's report were competent evidence, the report omits any mention of the impact of any proposed change in Board policy on the Plaintiff's particular lease, which is not a 99-year lease and which, as previously established, does not contain an option to convert to a 99-year lease.

Not only is there no evidence that Plaintiff's property has diminished in value, neither is there evidence that Plaintiff has been denied financing for his leased property.  (Fields Mot., Doc. No. 32, Ex. F, H.)  Rice has not challenged the Defendants' evidence that Rice did in fact re-finance his property in April of 2006.  (Defs.' Mot., Doc. No. 45, Ex. P.)  Moreover, Plaintiff admits that he has not sold or attempted to sell any property subject to

a lease with the Water District.  (Fields Mot., Doc. No. 32, Ex. F.)  Nevertheless, Plaintiff

argues that others have suffered a decrease in property value or have been denied financing.

Beyond his own hearsay testimony, however, Rice declines to identify any of these

individuals and has produced no proper evidence to confirm these assertions.  (Rice Depo.

27:22–28:21.)   Because Plaintiff has failed to produce competent summary judgment

evidence that he has suffered an "injury in fact" or that such an injury is imminent, the Court

concludes that Plaintiff does not have standing to bring a claim for impairment of property

rights under 42 U.S.C. § 1983 against any defendant, and summary judgment should be

granted as to this claim.[12]

## IV.    INDIVIDUAL DEFENDANTS' IMMUNITY FROM CIVIL LIABILITY

The individual Defendants argue that they are immune from suit under various

immunity doctrines.  The Court will consider each available immunity in turn.

### A.    Legislative Immunity

Defendants Jim Young, Tim Boone, Shirley Reed, and Douglas Baker—individual

members of the Water District Board—argue that they are entitled to absolute immunity from

---

[12] Similarly, Plaintiff's claims have not ripened.  While standing is concerned with *who* is a proper party to litigate a matter, the ripeness doctrine prevents premature adjudication.  *See Thomas v. Union Carbide Agr. Products Co.*, 473 U.S. 568, 580 (1985).  "[R]ipeness is peculiarly a question of timing.  [I]ts basic rationale is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements."  *Id*. (citations omitted). Here, Plaintiff has not tried to sell his lease and he has not been denied financing.  Indeed, Defendants indicate that Plaintiff was able to refinance his home in 2006.  They also indicate that they would be willing to permit Plaintiff to transfer his lease, should he request a transfer. Because Plaintiff has not actually tried to sell his lease and has not been denied financing, Plaintiff's claims are too speculative and abstract to be properly adjudicated.

civil liability for legislative actions they have taken as members of the Board.  Legislative immunity extends to local and municipal officials who perform legislative acts.  *Bogan v. Scott-Harris*, 523 U.S. 44 (1998).  In *Bogan*, the Supreme Court pointed out that legislative immunity is of special importance at the local level where the time, energy and resources needed to defend against litigation can easily overwhelm the part-time citizen legislator.  *Id*. at 52.  Only legislative acts are protected from suit, and the question of whether an act is legislative "turns on the nature of the act, rather than on the motive or intent of the official performing it."  *Id*. at 54.  "[I]t simply is 'not consonant with our scheme of government for a court to inquire into the motives of legislators.'"  *Id*. at 55 (quoting *Tenney v. Brandhove*, 341 U.S. 367, 377 (1951)).  In contrast, an official is not immune from liability for those actions which are described as "ministerial"—that is, when the official is carrying out a duty for which he lacks discretion.  *Id*. at 51–52.  An official's liability for a ministerial act often arises from the official's failure to act in accordance with his non-discretionary duty.  *See id*. The Court must determine, therefore, whether the Defendants' alleged improper conduct is legislative in character.

Here, Plaintiff alleges that his constitutional rights were violated when the Water District Board (1) cancelled the 2005 Water District Board election; (2) divided the Water District into precincts; and (3) assigned themselves to specific precincts without regard to where the Board members resided.

The Board's decisions to conform the Water District's elections to the change in Texas law were made by vote and are certainly legislative functions. *See Bogan*, 523 U.S. at 55 (voting for an ordinance is a "quintessentially legislative" act). These decisions represented policy changes that affected every potential Water District voter, potential Board candidate, and every future Board member. Plaintiff argues that the Court should take into account the Board members' possible motive to exclude specific individuals from running for office in 2005 and 2006 as evidence that their decisions to change voting procedure were not legislative acts.[13] The test for legislative immunity, however, focuses on the challenged act itself, "stripped of all considerations of intent or motive." *Id*. Accordingly, the individual Board members are entitled to absolute immunity from suit for their votes to amend Board election procedure, whatever their motives might have been.

---

[13] Plaintiff argues that *Bartlett v. Cinemark USA, Inc*., 908 S.W.2d 229, 234 (Tex. App.—Dallas 1995, no writ), stands for the proposition that an individual is not entitled to legislative immunity when a decision affects particular individuals differently than other individuals. *Bartlett*, however, simply applied the rule that a municipal body's decisions to approve or deny applications for a zoning *variance*, as opposed to the enactment or amendment of zoning *ordinances*, are considered ministerial acts because they involve application of existing legislative policy to a specific individual or parcel of land rather than an enactment of policy that impacts the community at large. *See id*. at 235–36 (determining that zoning decision made within confines of existing ordinance); *Bryan v. City of Madison, Miss*., 213 F.3d 267, 273 (5th Cir. 2000) (noting differences between ad hoc decision making and changes in general policy), *cert. denied*, 531 U.S. 1145 (2001). The *Bartlett* court determined that, because the municipal body's challenged decision affected an individual's particular interests and did not affect general municipal policy, the act was ministerial and not legislative. The challenged decisions in this case, however, affect every Water District lessee, voter, or potential Board candidate in the same way, and constitute general policy decisions, as opposed to ministerial acts that solely affect Plaintiff. The Board members are entitled to legislative immunity for these decisions.

Plaintiff has also claimed that the Board has "*systematically* refused to agree to lease transfers of the 99-year or perpetual lease forms when homes were sold.  Instead, the Water District has insisted that homeowners and home purchasers agree to one-year leases that contain provisions much less favorable to the lessees."  (Pl.'s 2nd Amend. Compl. ¶ 32 (emphasis added).)  Defendants argue that Plaintiff is complaining, not about individual *applications* of Water District policy, but about "systematic" changes in Water District policy that affect all leases.  Generally, the enactment, amendment, and appeal of general land use policies are regarded as legislative in nature.  *See Bryan v. City of Madison, Miss.*, 213 F.3d 267 (5th Cir. 2000) (finding that rezoning was within absolute legislative immunity, but mayor's vetoes of sites and development plan, delayed decisions relating to developer's plans, and mayor's application to rezone were not protected by absolute legislative immunity), *cert. denied*, 531 U.S. 1145 (2001).  Plaintiff has produced no evidence to show that the complained-of conduct represents anything other than a "systematic" policy change. Accordingly, the individual Defendant board members are entitled to absolute legislative immunity for their part in the Water District Board's decision to alter or amend Water District policy governing future lease terms.

## B.      Qualified Immunity

The individual Board member Defendants, as well as Defendants Drew Nixon, the Water District's former CPA, and Larry Fields, the Water District's Counsel (collectively the "individual Defendants"), argue that, to the extent that their actions constituted the exercise

of discretionary authority on their part, the individual Defendants are also entitled to qualified immunity.  Qualified immunity protects a government official from civil liability for damages based on the performance of discretionary functions if the official's actions did not violate a clearly established constitutional or statutory law of which a reasonable person would have known. *Hampton v. Oktibbeha County Sheriff Dept.*, 480 F.3d 358, 363 (5th Cir. 2007) (citing *Easter v. Powell*, 467 F.3d 459, 462 (5th Cir. 2006)).  When a defendant pleads qualified immunity and shows that he is a government official whose position involves the exercise of discretion, "the plaintiff then has the burden to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law." *Id.*  (quoting *Pierce v. Smith*, 117 F.3d 866, 871–72 (5th Cir. 1997)).  "To determine whether a defendant is entitled to qualified immunity, this court engages in a two-pronged analysis, inquiring (1) whether the plaintiff has alleged a violation of a constitutional right and, if so, (2) whether the defendant's behavior was objectively reasonable under clearly established law at the time the conduct occurred.  If the plaintiff fails to state a constitutional claim or if the defendant's conduct was objectively reasonable under clearly established law, then the government official is entitled to qualified immunity." *Id*. (citing *Easter*, 467 F.3d at 462).

Defendant has established, and Plaintiff does not contest, that the individual defendants are or were acting as government officials whose positions involve the exercise of discretion.  Accordingly, the Plaintiff must show that he has alleged a violation of a

constitutional or statutory right and, if so, whether the offending defendant's behavior was objectively reasonable under clearly established law.  *See id*.

Plaintiff argues, first, that the Board's rejection of his application to run for the Water District Board in 2005 is a violation of his constitutional rights.  As established above, however, the Board later conceded Plaintiff's right to run for office.  The Board cancelled the election, however, because the Water District was not authorized to hold elections in 2005.  The Plaintiff has shown no other violation of clearly established law in connection with this decision.  Moreover, given that the law had changed in regard to a candidate's qualifications to run for a water district board,[14] the Plaintiff has not shown or argued that any Defendant's conduct in this regard was objectively unreasonable.

Plaintiff further argues that the Board's decision to cancel the 2005 elections, divide the district into geographic precincts, and assign members to specific precincts without regard to where the Board members resided was a violation of clearly established law.  As discussed previously, however, the Board's decision to create single-member districts and assign themselves to precincts was expressly provided for under the Texas Water Code and, as noted above, was not a violation of Plaintiff's constitutional rights.

Plaintiff has failed to specify or argue that any defendant engaged in any other violation of a clearly established constitutional or statutory right that justifies subjecting them

---

[14] Prior to 1999, a candidate for election to the Water District Board must have been "(1) a resident of the district; (2) an owner of land in the district; and (3) 21 years old or older at the time of his election."  Acts 1971, 62nd Leg., p. 402, ch. 58, §1, eff. Aug. 30, 1971, *amended by* Act of May 30, 1999, 76th Leg., R.S., ch. 1354, § 13, 1999 Tex. Gen. Laws 1354.

to suit.[15]  Nor has Plaintiff argued or produced evidence that any individual Defendants'

conduct was objectively unreasonable.  Accordingly, the individual defendants, including

Defendants Nixon and Fields, are entitled to qualified immunity from suit.  All claims against

them, including Plaintiff's Texas Election Code claims, should be dismissed.

### C.      First Amendment Immunity

Finally, the Defendant Board members and Defendants Nixon and Fields argue that,

to the extent that the individual Defendants were acting in their individual capacities to

encourage or propose that the Water District Board make changes to election procedures or

lease policy, then those individuals are immune from suit based on the First Amendment

rights to petition the government.  The Defendants are correct.  If Plaintiff's claims against

the individual Defendants are for their acts petitioning the Board for a change in policy, then

the individual Defendants are immune from suit for this conduct.  *See McDonald v. Smith*,

472 U.S. 479, 482 (1985) (discussing the common law and First Amendment rights to

petition the government for a redress of grievances).

---

[15] Rice fails to argue in his Response to the individual defendants' Motion for Summary
Judgment that defendants Baker and Nixon are not entitled to qualified immunity for their
actions in January and February of 2006 with respect to Rice's rejected application to run for the
Water District Board.  (Pl.'s Resp., Doc. No. 46, at 5–7.)  Accordingly, the Court concludes that
the individual defendants are entitled to qualified immunity for these actions as well.

## CONCLUSION

For the above stated reasons, the Court finds that summary judgment is appropriate in favor of all Defendants as to all of Plaintiff's claims.  It is therefore

**ORDERED** that the Plaintiff's claims against all defendants are hereby **DISMISSED**.

**It is SO ORDERED.**

**SIGNED this 17th day of July, 2007.**


_____
MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE